## MORRIS v. SARGENT et al.

### I. Per WRIGHT, Ch. J.; LOWE and COLE, JJ., concurring.

1. **Deed:** EVIDENCE: ACKNOWLEDGMENT. Mere want of recollection of signing and acknowedging the execution of a deed should have but little weight against the certificate of the officer that such execution was duly acknowledged.

2. **Evidence:** OFFICIAL CERTIFICATE: ONUS. The burden of proof is upon the party who impeaches the truthfulness of the official certificate of the acknowledgment of the execution of a deed; and the fact that a notary cannot remember incidents connected with the acknowledgment is entitled to little weight as against the certificate.

3. —— HANDWRITING. On the trial of a chancery cause *de novo* in the Supreme Court, the court may compare the signature affixed to an instrument in controversy with writing of the same person which is proved to be genuine, as evidence of handwriting.

4. **Deed:** EXECUTION AND ACKNOWLEDGMENT. An acknowledgment of a deed by the grantor as his voluntary act is a sufficient execution, though the signature may have been affixed thereto by another.

5. **Estoppel:** BY ACT OF ANOTHER. Before a person can be estopped by the act of another, the person sought to be estopped must know of the act. Neither can a person be bound by the act of another as his agent without some knowledge that he is so acting.

6. **Deed:** EXECUTION BY WIFE: QUERE. Would a wife be bound by duly signing her name, either by herself or her agent, to a deed conveying real estate, without an acknowledgment of the execution of the same in the manner prescribed by the statute?[1]

7. —— HUSBAND AS AGENT. A deed conveying the homestead, executed by the husband, who signed both his own and his wife's name thereto, will not be treated as the deed of the wife, upon evidence showing that the husband frequently executed deeds conveying real estate in that manner, with the acquiescence of the wife.

8. **Homestead:** ABANDONMENT. An abandonment of the homestead for a temporary purpose does not relinquish the homestead right, as to parties who have not sustained any prejudice thereby.

---

[1] That an acknowledgment is not necessary, see *Sims* v. *Hervey*, decided at the December Term, 1865.

Morris v. Sargent.

9. —— ESTOPPEL BY LEASE. A lease by the husband of premises claimed by the wife as a homestead, does not estop the wife from denying the title of the lessor.

II. Per DILLON, J., not concurring.

Deed: IMPEACHMENT OF. To establish a case involving the commission of two criminal offenses, the impeachment of the official acts of an officer of the law, and at the expense of rights and a title fairly acquired, the proof should be extremely clear.

*Appeal from Johnson District Court.*

WEDNESDAY, DECEMBER 21.

ON the 16th of April, 1859, Martin L. Morris made his eleven promissory notes, payable to the order of himself, amounting in the aggregate to the sum of eleven thousand two hundred and fifty dollars. These notes were negotiated to the respondents, the Merchants' Bank of Boston, and the money received thereon appropriated to the use and benefit of said Morris. To secure these notes a deed of trust was executed, purporting to be signed by said Morris and his wife Sarah J., to George B. Sargent, authorizing the sale of the real estate therein mentioned upon certain terms and conditions, as in said deed specified. The several tracts of land contained some three hundred and seventeen acres, and two lots in Iowa City, including the homestead of said grantors. Default being made in the payment of these notes according to the terms of the trust deed, the trustee in June, 1862, after due notice, sold all of the land and lots to the bank, and executed a deed for the same. In May, 1863, the said Sarah J. Morris, her husband joining her therein, filed this bill to set aside and cancel the said deed to Sargent, and his deed to the bank, so far as they purported to convey or encumber her dower interest in said premises, or the right of said complainants to their homestead, upon the ground that she never signed or

executed said deed of April 16, 1859, and never in any manner consented to the same.

The respondents and the Merchants' Bank answer, denying particularly and specifically all of the material allegations of the bill. The cause was heard upon the bill and answer, and a large amount of oral and documentary evidence, and upon the final hearing the bill was dismissed, and complain. ants appeal.

*Rush Clarke* for the appellants.

*Edmonds & Ransom* for the appellees.

WRIGHT, Ch. J. — Did the complainant, Sarah J. Morris, sign and execute the trust deed of April 16, 1859? When we have decided this question, there remains, in our opinion, but little else to consider. For, if she did, the whole gravamen of complainant's bill falls to the ground, and the decree below should be affirmed. If she did not, her interest is not affected by such conveyance; the deed did not encumber the homestead in whole or in part, and the decree should be reversed. Other questions arise, if it should be proved that she did not execute the deed, but they present but little difficulty compared with the cardinal or leading one above stated. We proceed, then, to the consideration of this, the main point in the case; that to which most of the testimony is directed, and which has occupied the larger share of the attention of counsel.

Objections are made to certain testimony offered by both parties, some of which were sustained and others overruled in the court below. Without passing upon the admissibility of this testimony, we shall decide the case upon that admitted and heard in the District Court.

For it is complainants who complain of the exclusion and admission of certain testimony, and as a majority of the court have arrived at a conclusion favorable to their

view of the case, without regard to said supposed errors, it follows that we need not consider the correctness of such rulings.

The claim of the wife is, that she never signed or acknowledged the deed, but that her signature was placed there by her husband without her knowledge or consent. Appellees claim, on the other hand, that she did sign the deed and duly acknowledged the same. Upon this controverted point there is testimony of two kinds : *First*, affirmative and negative, going to the very fact of the execution or non-execution of the instrument, given by witnesses cognizant of the facts and circumstances. *Second*, that of experts speaking from a comparison of handwriting.

Of the first kind is that of Mrs. Morris herself. She states most positively and unequivocally, that she never did sign the deed, and that if her name appears thereto it was signed by some other person without her concurrence or approval. Upon this point it would be difficult to obtain testimony freer from doubt or uncertainty. She states circumstances, too, which tend to corroborate her; as that she was in bad health; resided some sixteen miles from Iowa City, the place where the notary says the deed was acknowledged; was not there during the month of April, 1859; did not know or see the notary until some months afterwards, and never heard of such an instrument until about the time the sale was made by the trustee. In addition to all this, she states that she had no knowledge that her husband was borrowing this sum of money at the time, and heard nothing of it until in the spring of 1863; that she is positive she should remember the circumstance if she had signed, or authorized any one to sign, her name to a deed, encumbering their homestead for so large an amount. She testifies intelligently, and with great apparent candor, impressing us with the strong conviction that she speaks truthfully and honestly.

Morris v. Sargent.

We are aware that it may frequently occur from the lapse of time, and in the case of numerous conveyances made by husband and wife, without much care or thought on her part, that she may execute and acknowledge some without recollecting the fact, and even honestly forgetting the circumstances connected with the same. In all such cases, her want of recollection should not be permitted to have much, if any, weight against the certificate of the officer that she did, in fact, appear before him, and duly acknowledged the deed. And, again, there are cases in which she really appeared before the officer, but seeks to deny that she actually acknowledged the same. In such cases, we admit, there are authorities for holding that she cannot gainsay the conclusiveness of the certificate, and that the title of the grantee (and especially if there has been subsequent conveyances), cannot be affected by any such claim or denial.

*1. DEED: evidence: acknowledgment.*

Whether this rule is not changed as to the immediate question, at least by our statute, which declares that "neither the certificate, nor the record, nor the transcript thereof is conclusive evidence of the facts therein stated " (and see *O'Ferrall* v. *Simplot*, 4 Iowa, 381), we need not stop to inquire, for we are not aware of any case or rule which concludes a party by a deed which he never signed, or that would estop him from showing that he never appeared before the officer certifying the acknowledgment. Nor is a case of a mere want of recollection applicable to the one at bar. The witness states so many facts and circumstances to substantiate the truth of her statement, that we must disbelieve her entirely, and conclude that she is swearing willfully false, or be forced to the conclusion that she did not sign this deed.

Opposed to her testimony is that of the officer taking the acknowledgment, the substance of which is as follows: He, at the time of the acknowledgment, was a resident of

Iowa City; was a notary, and engaged in the banking house of Cook, Sargent & Downey; has no distinct recollection of witnessing the execution of the deed by either party, but it was acknowledged by both parties on or about the date of the certificate. About this time he was taking so many acknowledgments that he cannot recollect the incidents attending this, but knows it was acknowledged before him by them, or he would not have so certified. He further states that he was accustomed to see Martin L. Morris almost daily, and Mrs. Morris several times at her house and other places in Iowa City and on the premises in dispute. At one of these times he took the acknowledgment, but where or who was present he does not recollect. He does state, however, *it was taken in Iowa City.* The witness also states that he never certified to an acknowledgment unless the person was before him, except in two or three instances, other than complainants, from whom he had special instructions.

Now we readily concede the full force of this testimony, adding that we attach but little weight to the fact that he does not remember the incidents connected with this particular acknowledgment. We are well aware of the hardship of a doctrine which would throw doubt upon the at least *prima facie* effect due to the solemn certificate of the officer, by the fact that he cannot remember the facts and circumstances attending each one of his official acts. We concede, also, that the whole burden of proof is upon complainants to rebut the effect of such certificate. The officer acts under oath, and is liable to be indicted and heavily fined if he knowingly states a material untruth in his certificate. (Rev., § 2232.) And yet we do not think that the testimony of this witness tends much, if any, to rebut that of complainant. It must be remembered that he was in the banking house of Cook, Sargent & Downey, through whom the negotiation

2. EVI-
DENCE: of-
ficial cer-
tificate:
onus.

was made for the money borrowed by Morris, and who received the proceeds thereof upon debts owing by Morris to them. The witness was engaged in his duties in said bank, and perhaps never entertained a doubt as to Morris' solvency and the entire correctness of everything connected with said deed. It is doubtless true that he never intended to take an acknowledgment without the parties being present. This was undoubtedly his general custom, and yet it is no impeachment of his veracity or his fidelity as an officer to say, that in the hurry of business, his knowledge of the parties (grantor and beneficiaries), he unintentionally departed in this instance from his usual custom. And there is one fact which he states that renders it almost reasonably certain that he did depart from it. He states unequivocally that the acknowledgment was taken in Iowa City. It was not taken at the residence of the parties, on the farm, sixteen miles distant, or he certainly would have remembered it. And yet we think it very clearly shown that Mrs. Morris was not in the city during the month of April, 1859, nor at any time from the previous fall until about the middle of May. The witness, Mrs. Harrison, a relative of complainants, states this fact and corroborates it by such circumstances as to leave but little, if any, doubt upon the subject. She lived in the house owned by Morris in the city, and to which her uncle and aunt (the complainants) were accustomed to come on visiting the city, or when in on business. She visited complainant (Sarah J.) in January, and knows that she was then confined to the bed, and when in the city in May afterwards, she was still quite feeble. And while there is, of course, a possibility that she might have been in the city in April without the knowledge of the witness, it is not probable in view of all the circumstances. But in addition to this, the witness remembers that Morris was in the city in April, about the middle, and remained all night,

but that his wife was not with him. When she was there in May, no one called at the house to see Mrs. Morris on business, nor was she away from the house. And thus it is, as it seems to us, that upon the fact of execution or non-execution, the testimony sustains appellants' case.

We come, then, to the testimony of the experts. Here, as usual, we have differences of opinion, but we think the preponderance is in favor of the complainants' position. None of the witnesses speak from a knowledge of the wife's handwriting. They have before them, however, two indisputably genuine signatures, and compare them with the deed in controversy, and two others purporting to be signed by Morris and wife. From this comparison, several witnesses unite in saying, that neither of the three deeds were signed by Mrs. Morris, but as they believe by the husband, with whose handwriting they are familiar. They not only give their opinions, but proceed to point out and designate the differences, in such a manner as would satisfy, as it seems to us, the most casual observer of the correctness of their conclusions. It is true that other witnesses think that the five signatures were made by the same person; but it seems to us that they fail to satisfactorily state the grounds upon which they base their opinions. In addition to all this, we have these instruments before us, and have examined the several signatures. Under the statute, evidence respecting handwriting may be given by comparison, made by experts, or by the jury, with writings of the same person which are proved to be genuine. (Rev., § 3997). In a case of this kind where the evidence is all before us to be examined *de novo*, we may do the same thing, or make the same comparison which a jury might. After making this comparison, we are strengthened in our belief that Mrs. Morris never signed this deed. It is not to be denied that there is some similarity between these several signatures. Those to the

Morris v. Sargent.

deeds, however, are exceedingly similar, while the two admitted to be genuine are much like each other, and unlike the other three. The formation of many of the letters, the method of spelling the first name of the wife, and the entire style of penmanship, are so dissimilar as to satisfy us, in connection with the testimony of the experts, and the positive testimony of the complainant, that the husband, and not the wife, wrote her signature to this deed.

II. But it is suggested that, though the signature may not be hers, she may, nevertheless, have adopted it, or consented that some other one should write her name, and that if she *acknowledged* the deed as her voluntary act, it would be valid and binding. With this proposition, we wage no controversy. It is not to the genuineness of the signature that the officer certifies, but that the party acknowledged the instrument as his or her voluntary act and deed. If the name is affixed by the grantor himself, or another one for him, and the instrument is duly acknowledged, it is sufficient. But we have already attempted to show that the wife neither signed nor acknowledged this deed. The testimony which establishes the one fact, goes fully to sustain the other.

4. DEEDS: execution and acknowledgment.

And this brings us to one further inquiry. It is suggested that the husband, in this case, had been in the habit, for a great number of years, of thus signing and acknowledging numerous deeds for himself and wife, with her knowledge and consent, and if this is so, she would be as effectually concluded by the act of the husband in acknowledging and executing this deed in her name, as though she herself had signed and acknowledged the same. Or, perhaps, the same proposition may be stated thus: that she has so long and so often consented to this method of disposing of her interest in his real estate, that she is now estopped from denying its validity, or the suffi-

5. ESTOP-PEL: act of another.

Morris v. Sargent.

ciency of the act in this instance.  Or, still again, that she has, by her acquiescence, if not by her voluntary act and consent, constituted him her agent to thus dispose of her interest in his real property.

To this proposition, in either form, there are insuperable objections of fact as well as law.  While there may be some evidence that this was *his* habit, there is none that *she* ever had any knowledge of or consented to it, aside from the testimony of Morris himself, which, on respondents' motion, was excluded, and is not, therefore, before us. His acts, without her knowledge or consent, would not, of course, bind her.  To estop a party by the act of another, the person sought to be estopped must, at least, *know* of the act.  And so, before a principal will be bound by the act of one purporting to act as his agent, the principal must have some knowledge that the person is so acting.

But aside from the consideration, how far does the law *6. DEED:* sustain appellees' position?  And in the first place, *by wife:* whether the wife would be bound by signing a *quere?* deed herself or by her duly authorized agent, without duly acknowledging the same, is, to say the least of it, a question of great doubt under our statute.  We know that the husband may thus part with his interest in real estate, and that the deed will be effectual against him, and all having notice of the same.   Our statute makes no provision for the separate examination of the wife, but the same certificate of the officer taking the acknowledgment is provided for all deeds.  Now, is an acknowledgment by the wife essential to convey her dower, or can she convey it by simply signing the deed?  In other words, is the safeguard of an acknowledgment, which was substituted for the process of fine and common recovery at common law, entirely abrogated, and is she concluded by a deed to which her signature is obtained, either in person or by agent without any other or further formality?  As already suggested, the

inquiry is not free from doubt, is very important in its consequences, affecting as it does the interest of almost every family in the State, and should therefore be passed upon only after the fullest discussion and deliberation, and in a case fairly and necessarily raising it. As this necessity does not arise in this case (and as we might not, as at present advised, be unanimous in the disposition of the question), we pass it until such time as it is more legitimately before us for determination. For if appellees' theory as to the effect of the act of the husband in signing the wife's name to this deed is correct, what becomes of the statute of frauds? She never in writing certainly author-

7. —— ized the husband to thus convey or relinquish her
husband
as agent. dower, nor can it be claimed that it was signed by the husband for her and in her presence. Nor has she done or received anything to take the case out of the statute. Is the interest of the wife in the real estate of the husband to be divested by an act resting, so far as her consent or concurrence is concerned, entirely in parol; while the interest of no other party can be thus conveyed? Argument is certainly not necessary to show that she is not thus to be made an exception.

But it must not be forgotten that the important interest in this case relates to the homestead. And here the statute is express that a conveyance of such homestead is of no validity unless the husband *and wife concur and sign the same.* (Code, § 1247.) And again, "it may be sold for debts *created by written contract, executed by the persons having the power to convey,* and expressly stipulating that the homestead is liable therefor." (§ 1249.) These sections have received a construction, as will be seen by the following, among other cases: *Sharp* v. *Bailey,* 14 Iowa, 387; *Babcock* v. *Hoey,* 11 Id., 375; *O'Brien* v. *Young,* 15 Id., 5; *Yost* v. *Devault,* 9 Id., 60; *Alley* v. *Bay,* Id., 509; *Larson* v. *Reynolds,* 13 Id., 579.

In the light of these decisions, and the plain reading of the statute, we are at a loss to conceive how it can be claimed that the deed was effectual to pass the title to the homestead. To so hold would make the statute a nullity; would place it in the power of the husband, in every instance, to dispose of the homestead without the formal written concurrence of the wife; would make the boasted homestead right a delusion and a sham; forms, shields and safeguards nothing, and non-essentials everything. And this too without reference to the question whether she can convey or encumber the *homestead* without the formality of an acknowledged deed, if she may her dower interest.

Not only so, but it is worthy of remark that it nowhere appears or is pretended that the deed was received or accepted upon any such assumption. In other words, the grantees or beneficiaries never acted upon this assumed agency, or upon the fact that the wife had, by a series of similar undisputed acts on the part of the husband, consented to this method of changing the homestead. And if they never acted upon it, the doctrine of estoppel cannot apply. *Lucas* v. *Hart*, 5 Iowa, 415; *Welland Canal Company* v. *Hathaway*, 8 Wend., 481; *Heane* v. *Rogers*, 9 B. & C., 577. They may have acted upon the deed as *her* voluntary act, but that is a very different thing which we now proceed, finally, to notice.

And as to this part of the case it is insisted, that there was an abandonment of the homestead; a recognition of respondent's rights; a holding under them; and that the wife is estopped by *such* acts from now setting up her claim.

There is testimony tending slightly to show that she knew of the existence of the trust-deed some time before

8. HOME-STEAD: abandonment.

the sale. The weight of the evidence is, however, that she then, and until about the time of the sale, supposed it was all upon the two lots in Iowa

City.  When the sale took place, her husband was absent
in the "volunteer service" of the United States.  Some
timo in the fall after this, she removed with her family to
Iowa City, and remained until a short time after her hus-
band's return the ensuing spring, when she returned to the
farm.  There is nothing tending to show that she intended
to permanently abandon the homestead.  On the contrary,
the proof rather is that she went to Iowa City to be more
convenient to schools for the children, and for a temporary
purpose.  See *Fyffe* v. *Beers, ante*.  And all this was after
the trust-deed, after the sale by the trustee, and when
respondents could not possibly have sustained any preju-
dice by the supposed abandonment. *Davis, Moody & Co.*,
v. *Kelly*, 14 Iowa, 523.  They did not rely upon it in
parting with their money or making the purchase.  It
appears, however, that the bank leased the prem-
ises to one Hill in January, 1863, and that this
same lessee had been left in possession by Mrs. Morris when
she removed to the city the fall before.  In March after-
wards, Hill leased to Morris the homestead; left the house
and moved into another building on the farm.  Strangely
enough, Morris agreed to surrender peaceable possession to
Hill, and Hill was to do the same to Morris as to the part
occupied by him at the end of the year, and yet Hill's lease
from respondent expired before that to and from Morris.
To these several agreements the wife was not a party,
either by word or deed.  By them, therefore, she should
not and cannot be concluded.  Her right to the homestead
is too well secured to be jeopardized and forfeited by such
acts of the husband without her consent.  She was absent
from the property but four or five months.  In May after
this, and almost as soon as she was fully advised of the
true condition of the estate, the incumbrance and her
rights, she commenced this action.  There was no unrea-
sonable delay.  She neither committed nor omitted to do

9. ESTOP-
PEL: by
lease.

anything calculated to mislead respondents to their preju-
dice. Her husband's agreements and contracts, even if
they amount to a recognition of respondents' title as against
him, are of no value as against her.

We therefore conclude, upon the whole case, that the
equities are with complainant, and that the decree below
should be reversed.

A decree will be entered accordingly, quieting complain-
ants in their title to the homestead as against respondents
under the trust deed, and declaring said deed invalid and
ineffectual, so far as it purports to incumber or bind the
dower interest of the said Sarah J. Morris in the other por-
tions of said lands and lots, but confirming and establish-
ing it as to the interest of said Martin L. Morris, in all
said property not included in the homestead.

Reversed.

DILLON, J., *dissenting.* — The adversary parties are Mrs.
10. DEED: Morris and the Merchants' Bank of Boston, the
impeach-
ment of. purchasers of the property at the sale by Sargent
as trustee.

The deed of trust was made in April, 1859 ; the sale by
the trustee to defendants in June, 1862. Mrs. Morris left
the place in the fall of that year, and again resumed, by the
artful device of her husband, in underleasing from the lessee
of the defendants, possession in January, 1863, and the pre-
sent petition, by the husband and wife, was filed in May,
1863.

She claims that the sale of the homestead parcel by the
trustee conveyed no title to the bank, because her husband
forged her name to the deed of trust, and because she never
acknowledged it.

The defendants are admitted to be *bona fide* purchasers
for value, both of the notes secured by the trust-deed, and
of the property at the trustee's sale, without any know-

ledge of the fraud which Mrs. Morris now insists was practiced upon her. So that, to prevail in her claim, she must necessarily show that her husband is guilty of one of the most heinous of criminal offenses — forgery — and the officer who falsely certified her acknowledgment was likewise guilty alike of a flagrant violation of his official oath and of an indictable offense. And she can prevail only at the expense of those who have in good faith parted with their money upon the credit which they reposed, and were entitled to repose, in the official acts of the officer who certified the acknowledgment.

It is pertinent to refer to a few authorities to show, not that a wife is bound by a forged instrument which she never acknowledged in fact, a proposition for which I do not, of course, contend, but to show the weight which the law attaches to the official certificate of the officer.

Thus there are cases which even hold that evidence cannot be received to invalidate an acknowledgment of a deed, on the ground of fraud or duress. *Bissett* v. *Bissett*, 1 Har. & McH., 211. So where the acknowledgment recited that it was taken by *two* justices, parol evidence was adjudged not to be receivable to show that it was taken by the justices separately on different days and places, when the effect of allowing such proof would be to defeat the conveyance. *Ridgely* v. *Howard*, 3 Har. & McH., 321. The certificate of the officer is conclusive of the facts therein stated, unless in cases of fraud and imposition. "There must," says HEMPHILL, Ch. J., in *Hartley* v. *Frosh*, 6 Texas, "be some acts alleged showing fraud, as, for instance, that there was a fraudulent combination between the notary and the parties interested. The certificate in this case is in conformity with the statute, and cannot be impeached merely by showing that in fact the wife was not examined apart from her husband."

Where the signature and acknowledgment of the wife have been procured by fraud or duress practiced upon the wife, this may be shown to avoid the deed, as to the fraudulent grantee, or volunteers and purchasers with notice; but not as to *bona fide* purchasers without notice, and for value, where the acknowledgment is regular on its face. *Schrader* v. *Decker*, 9 Barr, 14. And see also 3 Wheat., 457, 468; *McNeely* v. *Rucker*, 6 Blackf., 391; *Campbell* v. *Taul* (as to relief in chancery), 3 Yerg., 648.

To establish a case, then, involving the commission of two criminal offenses, the impeachment of the official acts of an officer of the law, and at the expense of rights and a title fairly acquired by the defendants, the plaintiff's proof should be extremely clear. A mixed case ought not to answer. It should be freed from all suspicion and doubt. Such a case has not, in my judgment, been made; far from it.

I do not propose to give my views *in extenso*, but in outline merely, as the controversy chiefly turns upon the facts. I lay Morris' testimony out of the case. He would not be heard in his *own behalf* to avoid the deed, for the reason that he had forged his wife's name thereto. Though he unblushingly admits that he did so, the *wife* cannot have the benefit of this testimony, if entitled to any consideration, because in my opinion he is not a competent witness in favor of the wife against the defendant's objection.

Her case rests, then, upon her own testimony, and that of the experts called by her. She does testify that she did not sign or acknowledge the deed. But she also testifies the same thing in relation to a large number of other conveyances running through a long series of years, purporting to be signed and acknowledged by her, in relation to some of which she is directly contradicted by other and disinterested witnesses.

I infer from the testimony that her memory is not good, and that she is pliant in the hands of her husband. I do

not impeach her truthfulness, but I cannot safely rely upon her memory. The notary distinctly testifies that she did acknowledge it, and he has officially certified to that fact. He has no interest in the controversy, and it would indeed be most alarming to the owners of property, if the testimony of a party in interest can be allowed to overcome not only the official certificate of the officer, but his oath upon the witness' stand confirming the truth of the certificate. Little weight is due to the testimony of Mrs. Harrison, a relative of the plaintiffs. It is negative in its character. She did not know of Mrs. Morris being in the city about the date of the acknowledgment. Very likely; and yet Mrs. Morris may have been there and returned the same day with her husband. The unreliability of Mrs. Harrison's testimony as to dates, was very satisfactorily exposed on the cross-examination. Without anything to *fix* or rivet the date in her mind, she undertook to state the condition of Mrs. Morris' health, and that she did not visit her house (where she was in the habit of visiting), in a certain month four years before. She was utterly unable to fix any other date or month, except the very one when the acknowledgment to the trust-deed bore date.

My observation and experience with respect to the testimony of experts in handwriting have given me a very poor opinion of its value. I have seen many such cases tried, and I have never failed to see about an equal number of *skilled* witnesses on each side, the one affirming and the other denying the genuineness of the disputed signature.

It is no unusual experience, in trials of this kind, to hear the opinion of ten or twenty experts on the one side met by the counter-opinion of an equal number on the other. I do not deny that some weight is due to this species of testimony, but it is generally very unsatisfactory. This case forms no exception; the experts differed as usual. Taking the testimony of the experts alone, no court could see its

way, clear to any satisfactory conclusion, and no court would, on the strength of it, disturb the title of *bona fide* purchasers for value.

Other circumstances to my mind make strongly against Mrs. Morris' case. I mention a few: 1st. She did know of the trust-deed, and that it purported to be *signed* by *herself*, and that it embraced the *homestead*, and she knew this before the sale, because her attention was specifically called to the fact, and she saw the trustee's published notice of sale. She not only did not interfere to prevent it, but it is not shown that she either there, or at any time, set up the claim to any one (although she saw and conversed with the defendants' agents on the subject of the farm, the property, the sale, &c.), that she did not sign or acknowledge the trust-deed. 2d. After the sale, she left the premises and moved into Iowa City. 3d. While she is the party who is nominally prosecuting this cause, the real party is the husband, who, with this view, found it necessary, indispensably so, to obtain *possession* of the homestead. He effectuated this by leasing from the lessee of the defendants the homestead portion of the farm shortly preceding the institution of this suit. He recognized, thereby, the title of the defendants. When he obtained possession by this means, he, and not the wife, employed counsel and set in motion all the enginery of the law. She appears in it only when it is necessary to sign some pleading, or to give in her testimony.

I might set forth, with more precision and detail, the circumstances which fortify the general conclusions thus announced, but it would not affect the result.

In my judgment, the case was most fitly, most exactly, most truthfully characterized by the defendants' counsel, on the argument, when he, in substance, described it as the offspring of fraud and forgetfulness; fraud on the part of the husband; forgetfulness on the part of the wife. I think the decree of the District Court should be affirmed.