JUNE TERM, 1870.    261

Ford and another, Adm'rs, etc., vs. Smith.

# FORD and another, Adm'rs, etc., vs. SMITH.

ADMINISTRATOR—TITLE TO CHATTELS—EVIDENCE: (1.) Prima facie proof of administrator's title. (2.) His right to advance his own money to get property of estate to market.
PARTNERSHIP: (3.) Agreement to divide profits, not conclusive of partnership. (4.) Levy on partnership property for individual debt. (5, 6.) Estoppel in pais. (7.) Distinction between evidence and proof.

1. Where plaintiffs claimed certain land in good faith as the property of their intestate, with a right on their part to enter upon and control it, and logs cut thereon by A. under their direction were seized by defendant on an execution against A., while the latter was running them to market for plaintiffs, it was not necessary, in an action of trespass for such seizure, to prove in the first instance the actual title of their intestate to the land, but the facts above stated were sufficient prima facie evidence of their title.

2. The fact that one of the plaintiffs had advanced his own money to A. to enable the latter to get out the logs, did not disprove plaintiffs' title as administrators so as to justify a nonsuit, though it might be considered by the jury as bearing upon the question of an alleged fraudulent collusion between plaintiffs and A.

3. An agreement by which A., after running the logs to market and selling them, was to pay the money so advanced by plaintiffs, and pay the value of the stumpage, and then "divide" with the estate the balance of the money realized: Held to be merely a mode of determining A.'s compensation, and not to show a partnership.

4. Under an execution for the individual debt of A., it is a trespass to seize and sell the partnership property of A. & B. Only A.'s interest therein is subject to levy and sale.

5. Statements of A. to the effect that he owned the logs, could not affect plaintiffs' rights, if made without their knowledge.

6. Even if such statements had been made with the knowledge of plaintiffs, they would not be estopped from denying their truth, if they notified the defendant, after the levy, of their rights, and forbade his selling the property.

7. The price for which the logs were sold at public auction was evidence tending to prove their value; but there was no error in refusing to instruct the jury, at defendant's request, that such price was proof of their value. It is for the jury to determine what the evidence proves.

APPEAL from the Circuit Court for *Winnebago* County.

Action for damages for the conversion by defendant to his own use of certain pine logs, alleged to have been the property of the estate of William E Ford, the plaintiffs' intestate, and to the possession of which

plaintiffs claimed to be entitled as administratrix and administrator. The defendant as sheriff, levied upon and sold the logs as the property of one Imus (the father of the plaintiff *Mrs. Ford*) under an execution against said Imus.

After plaintiffs' evidence was in, defendant asked for a nonsuit, which was refused. The court *gave* the following instructions at the request of the plaintiffs: "1. If the logs were cut by authority of plaintiffs' intestate from his land, they were the property of the administrators. 2. If they were cut under an agreement with the administrators, or one of them, that money should be furnished by them, or one of them, they would remain the property of the administrators. 3. The sheriff, taking goods on execution, does not have the rights of a *bona fide* purchaser without notice. 4. The claim of Imus that the proceeds of the sale should be applied on the execution against him, does not in any way preclude the plaintiffs from claiming the logs, or affect their title." The jury were further instructed that if the logs belonged to Imus, when levied upon, their verdict should be for defendant.

The court *refused* the following instructions asked by the defendant: "1. Evidence concerning transactions between near relatives, like a father and daughter, and which is inconsistent with the surrounding facts, ought to be regarded by the jury with distrust, and received with caution; and the jury are at liberty to reject the positive testimony of such witnesses, when, from their manner, or their contradictory statements, or the attendant circumstances, they are satisfied it is not true. 2. If the bargain between the plaintiff *Mrs. Ford* and her father, Imus, was, that Imus was to do the work and attend to the business, and she furnish the means, and the two divide the profits, then the transaction was a partnership, and the sheriff might lawfully levy upon and sell the interest of Imus in the logs. 3. If the plaintiffs permitted Imus for a

long time to have the entire custody and control of the property, and to treat it in all respects as his own, and to sell and traffic in it as his own, and so control and act with reference to it as to induce the creditors of Imus, and those dealing with him, and the community generally, to believe that said property was in fact his own, and so as to cause his creditors to trust him in consequence of such apparent ownership, or to levy on the same by virtue of proper process: then such conduct on the part of the plaintiffs might operate as a fraud upon the creditors of Imus, and in such case no action would lie against the sheriff for taking such property upon proper process against Imus. 4. If the defendant duly advertised the logs and properly conducted the sale, the price at which they were sold at auction upon such notice is proof of their value. 5. The law presumes that all officers have done their duty; and in the absence of any proof to the contrary, it will be presumed that the sheriff properly advertised and conducted the sale. 6. There is no proof that the land on which the logs were cut was the property of the estate of Wm. E. Ford. 7. If the real transaction between Imus and *Mrs. Ford* was a loan of money from her to him, to be repaid on the sale of the logs in controversy, such transaction would give the plaintiffs no right to recover."

Verdict for the plaintiffs; new trial denied; and defendant appealed from a judgment on the verdict.

*E. L. Runals* (with *Felker & Weisbrod*, of counsel), for appellant, argued that inasmuch as it did not appear that plaintiffs ever had actual possession of the logs, they were bound to show title (1 N. Y. 522; *Porter v. Dalley,* 5 N. Y. Leg. Obs. 335; 2 Greenl. Ev. § 636; 19 N. H. 421; 2 id. 320; *Ames v. Palmer,* 42 Me. 197); that there was no evidence of title in this case except the statement of the witness Imus, that " the logs belonged to the estate of Wm. E. Ford,"

which was merely his conclusion of law from the contract made with him by his daughter, *Mrs. Ford;* that there was no evidence showing that the money *Mrs. Ford* pretended to have advanced Imus belonged to the estate, or that in making such contract she acted for the estate, but on the contrary the plaintiffs' own evidence tended to show that the money was her own, and therefore it appeared from plaintiffs' own showing that they had no interest in the property as administrators, and the motion for a nonsuit should have been granted. Counsel further contended that the instructions asked for defendant and refused, were correct and pertinent; and that the first and second instructions given were not warranted by the evidence, and the fourth was too broad, and tended to mislead the jury. 17 Wis. 495.

*Moses Hooper,* for respondents.

Dixon, C. J. The logs in controversy were cut upon land claimed by the plaintiffs to have belonged to the estate of their intestate, William E. Ford, and which they as the administrators claimed the right to enter upon and control. The logs were cut by their direction, or by the direction of one of them, the plaintiff *Mrs. E. A. Ford,* the administratrix, under such claim asserted in good faith. The witness Imus testified that the logs belonged to the estate. There was no testimony disproving or tending to disprove the claim thus made on the part of the plaintiffs. There was no testimony proving or tending to prove that the land did not belong to the Ford estate, or that Imus or any one else had or pretended to have any title or interest in it. The testimony on the part of the plaintiffs was, that Imus cut, rafted and run the logs by authority from them and as their agent, and that as such agent he had them in his possession at the time they were seized and taken away by the defendant. If the jury believed this testimony—and

there was none to the contrary—it was sufficient *prima facie* evidence of original title and ownership in the plaintiffs to enable them to recover in this action, without showing title to the land. The possession of Imus was the possession of the plaintiffs, unless the jury found the fraud or collusion between Imus and the plaintiff *Mrs. Ford*, which depended upon entirely different considerations, and which, if found, might have had the effect to deprive the plaintiffs of their title as against the judgment creditors of Imus. In this attitude of the case, the fraud depending upon the contract between Imus and *Mrs. Ford*, and the relations existing between them, and not upon any supposed title or interest of Imus in the land, the proof of title in the plaintiffs was sufficient, without going farther and showing that the land actually belonged to the estate.

Nor do we think it disproved, or tended to disprove, title in the plaintiffs, so as to justify a nonsuit, that the money advanced by *Mrs. Ford* to Imus upon the contract, so as to enable him to get out the logs, came from life insurance payable to her. It was her right and privilege, if she thought the interests of the estate of her deceased husband would be thus promoted, to advance her own money in that way, if she chose. It was a matter to be considered by the jury on the question of fraud and collusion; but, these being negatived by the verdict, it did not affect the title of the plaintiffs to the property.

And the several requests to charge, made by the defendant, were properly refused.

The first was properly refused because it was assumed that there were "inconsistent surrounding facts." We see no evidence tending to prove this; but even if there had been, it was a matter proper to have been submitted to the determination of the jury. It was not for the court to assume the existence of such facts. If the language of the request had been,

" if inconsistent with surrounding facts," a different question as to its propriety would have been presented.

The second request was inapplicable, and without evidence tending to support it. There was no evidence proving or tending to prove an agreement to divide the profits *as such*. The division of the profits, if any, was at most a mere arrangement by which Imus was to obtain compensation for his labor and services, or as wages to be paid to him. This did not constitute a partnership as between the parties, and none was intended. Parsons on Partnership, pp. 70, 71, 88 to 93, and notes and cases cited; *Appleton v. Smith*, 24 Wis. 336. The only testimony on this subject was that of Imus. He says: " There was no bargain as to what she (*Mrs. Ford*) was to pay me for cutting the logs off. She was to find the means, and see what they would amount to. I was to go on and cut them off as cheap as I could, and get them to the boom and sell them, make the most out of them I could, and when it was through we would talk of what would be right between us. There was no agreement as to compensation at the time."

Again he testifies: " I suppose I was to have what was left out of the logs after paying *Mrs. Ford* her money back, and paying what the timber stumpage was worth. There was no bargain talked about it, only I was to go on and get out the logs as cheap as possible, and when we got through, if there was any profit, we were to divide the profit."

But there was still another reason for refusing the request, even supposing a partnership to have existed, which was that the defendant did not levy upon and sell merely Imus's interest in the logs. He sold the *entire property*. He was apprised of the plaintiffs' title and claim before he advertised and sold, and it is well settled that the sale by an officer of the entire property, under such circumstances, is an abuse of his legal authority, which renders him liable as a

trespasser *ab initio*. *Waddell v. Cook*, 2 Hill, 47 ; *Walsh v. Adams*, 3 Denio, 125 ; *Wheeler v. McFarland*, 10 Wend. 318. After refunding the money advanced by *Mrs. Ford*, and an allowance of a fair price for the stumpage, it does not appear that there was any profit to divide. Indeed, it appears that there was none, so that Imus's interest in the property, on the supposition of a partnership, was nothing, and the measure of the plaintiffs' damages was the full value at the time of sale.

The third request to charge was inapplicable to the case, and unsound in law. There was no evidence whatever that the plaintiffs had permitted Imus to sell and traffic in and use and control the property in the same manner as if it was his own. It does not appear that the plaintiffs ever authorized or had the slightest knowledge of Imus's statements made to third persons that he owned the property, or could sell it as his own or otherwise than as agent ; and without such authority from or knowledge on the part of the plaintiffs, it is too clear that they were not to be prejudiced by such statements. And the proposition, too, that there could be an estoppel growing out of a mere levy made in consequence of such statements, although authorized, when the sheriff was informed of the truth, and notified not to proceed, before sale, is untenable. The sheriff does not, by the levy alone, acquire the position or the rights of a purchaser for value without notice.

The fourth request was properly refused because the price for which the logs were sold at the auction sales was not *proof* that they were worth no more, or of the value thereof. Proof is the effect of that evidence which is sufficient to produce conviction in the mind of the truth or existence of the fact in controversy. What the evidence proves is for the jury to determine. The price obtained at auction was *evidence*, tending to prove the value, and as such was

properly submitted to the consideration of the jury with the other evidence upon that subject.

The fifth request was merely an abstract proposition, from the refusal of which neither the defendant lost nor the plaintiffs gained anything. The plaintiffs' attorney had admitted the sales upon the executions, and the admission was of course of sales duly and legally conducted, and must have been so understood by the jury.

The sixth request has been already disposed of under the first point considered. There was no error in the refusal.

The seventh request was based upon a purely imaginary state of facts, and so ought not to have been granted. There was no testimony in the case to justify the inference, or authorize the jury to find that the real transaction between *Mrs. Ford* and Imus was a loan of money from her to him, to be repaid on a sale of the logs in controversy.

Of the several instructions given at the request of the plaintiffs, and all of which were excepted to by the defendant, it is unnecessary to speak separately. It is enough to say of them generally, that their correctness and propriety will sufficiently appear from the observations which have been already made.

*By the Court.*—Judgment affirmed.