## PARLIMAN v. YOUNG ET AL.

1. EVIDENCE: AGENT'S ADMISSIONS. The admissions of an agent outside the scope of his agency, are not competent evidence against the principal.

2. SAME: BEST EVIDENCE. Evidence which is substitutional in character will not be received, when evidence of a higher grade can be produced.

3. PLEADING: ESTOPPEL: WAIVER. Where an equitable estoppel *in pais* is not properly pleaded, and evidence of such estoppel is introduced and a verdict rendered thereon without objection, the objection to the pleading will be deemed waived, and the case considered as though such estoppel had been properly pleaded.

4. QUERY. Should not estoppels in *all* cases be pleaded, that the opposite party may know what he has to meet before the case is submitted to the jury.

5. INSTRUCTIONS. It is not error to refuse to give to the jury, as the law of the case, instructions which are simple abstract propositions of law.

6. INSTRUCTIONS: ASSUMING FACTS PROVED. It is not error to refuse instructions which assume facts as proved, concerning which there is conflict of evidence.

7. ESTOPPEL: PROOF. The facts essential to constitute an estoppel *in pais*, stated. It is for the jury to say whether such essential facts are proved.

8. INSTRUCTIONS: EQUIVALENT. The Court is not bound to give instructions in the forms and language in which they are asked. If those given sufficiently cover the case and are correct, the judgment will not be disturbed.

9. REPLEVIN: ISSUE: OWNERSHIP. In an action of replevin, when the issue is upon the ownership, an instruction is not misleading which states that, "*the right of recovery depends upon the question—who has the right of possession ? In other words, who is the owner thereof ? "*

10. INSUFFICIENCY OF EVIDENCE: VERDICT. Where questions of fact are passed upon by the jury, and there is evidence in the case tending to support the verdict, this court cannot say that there was not sufficient evidence to justify it.

*Appeal from the District Court of Minnehaha County.*

CLAIM and delivery to recover possession of a horse, harness and wagon. The complaint alleges that on the 9th of April, 1878, the plaintiff was lawfully possessed of the property, then and ever since his property, of the value of $201. That on that day defendants wrongfully took the property from the possession of, and unjustly detain the same from plaintiff; damage to plaintiff in the sum of $125, a demand of delivery to plaintiff and refusal of defendants.

The answer is, *first,* a denial of each and every allegation of the complaint, except as to the value of the property; *second,* that on the 27th day of September, 1878, one J. A. Wilson being the owner and in possession of the property, executed a chattel mortgage thereon to secure the payment to J. B. Young & Co., the defendants, of two promissory notes—one for $66.40, signed by Parliman & Wilson, and one for $100, signed by J. A. Wilson ; that said mortgage was filed in the register of deed's office of Minnehaha county, on September, 27, 1878; that default was made in the payment of the note for $100, signed by J. A. Wilson; that defendants on the 9th day of April, 1878, took possession of the property for the purpose of forecloseing the mortgage, when this suit was com-

Parliman v. Young et al.

menced and the property taken from them under the writ; and that whatever right plaintiff had to the property was acquired subsequently to the filing of said chattel mortgage, and was subject to the rights of defendants. The issues thus presented were tried by a jury, a verdict returned for plaintiff; motion for new trial denied, and defendants appeal.

The evidence introduced on the trial and brought to this court by bill of exceptions, discloses that both the plaintiff, and J. A. Wilson, the mortgagor of the property in controversy, claim title through one G. F. Ray; and that at the time of the purchase from Ray, the plaintiff and said Wilson were law partners, doing business at Sioux Falls.

F. G. Ray testified that "about September 26, 1878, I sold a span of horses, harness and wagon to plaintiff for $275, received in payment $25 and promissory note of Parliman, signed by one Wilson as accommodation signer. I understood from their conversation that Wilson owed Parliman $300. *After sale and delivery* of the property and after receipt of money and note, at Wilson's request, I executed a bill of sale of the property to Wilson."

There was also evidence on the part of plaintiff tending to prove that Wilson had bought a partnership interest in Parliman's business, agreeing to pay therefor the sum of $300. That Wilson was to pay for the team, in liquidation of this debt; that Wilson requested a bill of sale from Ray to himself to show that the title to the property had passed through him to Parliman, and this debt of $300 had thus been paid; and that after a formal delivery of the team, which was then in Al. Reck's livery barn, to Parliman, Ray executed this bill of sale to Wilson; that Parliman himself wrote the bill of sale, and that Wilson never had possession of the team.

On the part of defendants Wilson testified that he bought the team of Ray, and that immediately after the sale Ray went with him to the livery barn and delivered the team to him; that the morning after the sale he (Wilson) went to defendants, showed them the bill of sale, and wanted to borrow some money on the team; that Wilson and defendant Young went to the livery barn, where Peck showed them the team, and Young then drew up the

chattel mortgage and Wilson signed it; that Parliman knew the team was to be mortgaged, and was afterward told of it, and that in the transaction, plaintiff's note, held by defendants, was taken up.

Young testified that he went with Wilson over to the livery barn, and that the team was shown them by Peck.

The defendants here offered to prove by Young, that Peck, the livery man, then and there stated to Young that the team was the property of Wilson, and he was keeping it for Wilson, and that it was the property sold and turned over by Ray to Wilson.

To the introduction of which evidence plaintiff objected, the Court sustained the objection, and defendants excepted; and this ruling is one of the errors assigned by appellants.

The remaining facts disclosed by the evidence are stated in the opinion of the Court.

*Bippus & Boyce* and *Wm. A. Wilkes*, for appellants.

The respondent having written in his own handwriting the bill of sale to Wilson, on the faith of which the appellants advanced the money to him and received the chattel mortgage as security therefor, is estopped *as against the appellants,* to assert his title to the property. (1 Greenleaf on Ev., § 207; *Smith v. Espy,* 9 N. J. Eq. (1 Stock.) 160; *Reed v. Van Cleve,* 27 id. (3 Dutch.) 352; *Manufacturers' & Traders' Bank v. Hazard,* 30 N. Y. (3 Tiff.) 226; *Young v. Bushnell,* 8 Bosw., 1; *Hills v. Varet* 3 N. Y. Leg. Ob., 104; *Shearer v. Barrett,* Lalor, 70; *Faltman v. Lobach,* 1 Duer, 354; *Barnard v. Campbell,* 55 N. Y., 456; *Weaver v. Barden,* 49 N. Y., 286; Bigelow on Estoppel, 451; *Hale v. Skinner,* 117 Mass., 474; *Stevens v. Dennett,* 51 N. H., 324.)

We insisted at the trial and still maintain, that the representations and declarations of Peck made to Young, upon his making inquiry about the property, are admissible as evidence against the respondent, especially if the representations and declarations relate to the fact and nature of his custody of the property, or of his agency for the respondent. (1 Greenleaf Ev., § 113.)

*A. Frizzell, C. H. Winsor* and *Kershaw & Flagg,* for respondent.

Matter in estoppel must be specially pleaded, and it is error to admit evidence thereof unless so pleaded. (*Ranson v. Stanbury Gansha*, 22 Iowa, 334; *Waddell v. Morrell*, 26 Wis., 611, and cases cited; *Clark v. Huber*, 25 Cal., 594; 45 Cal., 121.)

Peck as bailee of Parliman, only, could not bind Parliman by his assertion; and if Peck was agent or bailee of Parliman, then Wilson had no title to this property. Wilson claims that Peck was his bailee in possession of the team. If this is true, how was this testimony material? Can Wilson's bailee bind Parliman by his assertions? Can a livery-stable keeper, because he is paid for keeping a horse, and clothed with the authority of feeding him three times a day, without further authority from his bailor, do an act that would tend to deprive his bailor of ownership in his property? (2 Kent, 566; *Morus v. Ingant et al*, 18 Iowa, 90; *Ford et al v. Smith*, 27 Wis., 261.)

The Court, in its instructions, must declare the law as it applies to this identical case. (*Lawyer v. Sauer*, 10 Kan., 470; Proffit on Jury Trials, § 311.) So in other cases it has been held improper, and error, for the Court to charge with respect to a fact; *all the facts* should be construed together. (*1st. Nat. Bank v. Currie*, 44 Mo., 91; *Balt. & Ohio R. R. Co. v. Bisley*, 14 Md., 424.)

The first and second requests of defendant are covered by instructions of the Court. A charge, as an abstract proposition, not pertinent to the issue may be refused, no matter how correctly it may state a proposition of law. (*Bowen v. Campbell et al*, 5 Wis., 187; *Doty et al v. Strong* (1844) Burr, 158; Proffit on Jury Trials, § 314, and cases there cited; 54 N. Y., 488; 37 Ills., 341; 38 Ills., 282; 44 Ills., 312; 50 Ills., 169; 4 Scam. (Ills.) 58; 1 Scam., 407; 1 Gilm., (Ills.) 10; 1 Ind., 348; 2 Ind., 130; 3 Ind., 433; 36 Cal., 404; 2 Cal., 39; 2 Cal., 387; 9 Cal., 353.)

The third instruction asked is bad, for the reason that it assumes facts to be proven about which there was much conflicting evidence and upon which the jury must pass.

KIDDER, J.—This case comes to us on an appeal from the District Court of Minnehaha county. It is an action to recover

the possession of personal property, called replevin.   The respondent, who was the plaintiff below, in his complaint alleges, that he was lawfully possessed of the horse and other property therein named.   The answer of the appellants denies this, and says one J. A. Wilson was the owner of said property, and had mortgaged the same to them; and the mortgagor being in default on the mortgage, they had taken possession of the property for the purpose of foreclosing it.   On this issue the case was tried by a jury.

The respondent introduced testimony tending to prove, that on the 26th day of September, 1879, he bought two horses (and other property) of one Ray—one of said horses has since died—and took possession of the same in Al. Peck's livery barn, and then and there delivered them to said Peck to keep for him, and that thereafter he agreed to pay said Peck for their keeping.

The appellants introduced testimony tending to prove that said Ray, on the same 26th day of September, sold said horses to said Wilson, gave him a bill of sale thereof, which was written by the respondent, and delivered the same to Wilson, who took possession of them.   That on the next day Mr. Wilson, for a valuable consideration, mortgaged said horses to the appellants.   The bill of sale and the mortgage were introduced in evidence by the appellants without objection.

The jury returned a verdict for the respondent.

Several exceptions were taken during the trial below by the appellants, but the arguments of counsel have been mainly confined to three of them:

1.   The appellants, on the trial, introduced as a witness on their part, J. B. Young, (one of the appellants,) and offered to prove by him " that at the time of the execution of the mortgage by Wilson, he, the defendant, went with Wilson to Peck's barn, and that Peck there and then stated to the defendant that the property in controversy was the property of Wilson, and that he was keeping it for Wilson, and that said Peck had the property in his possession in said barn at the time, and that this was the same property sold and turned over by Ray to Wilson."

To the admission of which the respondent objected.   The Court sustained the objection, and the appellants excepted to the ruling of the Court.

They then offered to prove by the same witness, "that" (the actual possession of the property being in Peck as livery-stable keeper, he boarding the horses,) " Peck represented to Young upon inquiry by Young as to the ownership of the property, that J. A. Wilson was the owner."

To the admission of which the respondent objected. The Court sustained the objection, and the appellants excepted.

Was this testimony properly excluded? The argument of the counsel for the appellants seems to be made upon the ground that Peck was the *agent* of the respondent, and therefore what he said to Young about the property when he showed it to him, is competent evidence against the respondent, and Mr. Young should have been permitted to testify to it.

Now with due deference to the learned counsel of the appellants, we are not able to find any evidence in the case which tends to prove that Peck was the agent of the respondent. If the evidence proves anything it makes him the *bailee* of the respondent. He was merely boarding the horses as a livery-stable man, and for which the respondent was to pay him a compensation. He was only the temporary custodian of them. (2 Kent, 566; 18 Iowa, 90; 27 Wis., 261.)

The evidence coming from Young was not the best. Mr. Peck, for aught we know, or appears in the case, should and could have been called. It is elementary that the best evidence should be employed of which the case, in its nature, is susceptible. In requiring the production of the best evidence, it is meant that no evidence shall be received which is merely substitutional in its nature, so long as the original evidence can be had. (1 Greenleaf Ev., § 82.) This rule, so far as we know, has not been changed. Again, it is found indispensible, as a test of truth, and to the proper administration of justice, that every living witness, should, if possible, be subject to the ordeal of a cross-examination, that it may appear, what were his powers of perception, his opportunities for observation, his attentiveness in observing, the strength of his recollection, and his disposition to speak the truth. But testimony from the relation of third persons even where the information is known, cannot be subjected to this test; nor is it often

possible to ascertain through whom, or how many persons, the narrative has been transmitted, from the original witness of the fact.    It is this which constitutes that sort of second-hand evidence termed heresay.   (Id. § 99, and cases there cited.)

2.    There was a conflict of testimony as to the cause of the giving the bill of sale.    But it was agreed between the parties, that at the time of the purchase of the property, Mr. Wilson owed the respondent $300, and that he paid Ray in part for said property $25, and the balance was paid in notes executed by both Wilson and the respondent.

After the evidence was concluded, the respondents asked the Court to give each of the following instructions to the jury, which the Court refused, as to each instruction; to which rulings the respondents excepted :

1.    " It is a general rule of law that whatever a man's real intention may be, if he manifests an intention to another party so as to induce the latter to act upon it in making a contract, he will be estopped from denying that such was his real intention, he will be bound by the intention so manifested."

2.    " A man cannot so deal with his property as to permit the practice of a fraud upon innocent third parties, and although he be the real owner of an article of personal property, yet if he so clothes another with the indications of ownership, that such other person may deal with the property as his own as by selling or mortgaging the property to an innocent purchaser or mortgagee, then such innocent purchaser or mortgagee will be protected in dealing with the apparent owner, and the real owner will be estopped to deny the rights acquired by such purchaser or mortgagee."

3.    "The jury are instructed on behalf of the defendants, that when a contract is made by and between parties, as in this case, and the final disposition and consummation of the transaction is merged in writing, all the previous conversations are of no account and the intention of the parties is merged in the written instrument."

4.    " If a man with knowledge suffers another to mortgage or sell his property, or so clothes another with the evidences of own-

Parliman v. Young et al.

ership that he may do such a thing, he is estopped from denying the rights of such innocent mortgagee or purchaser."  .

5.  " The jury are further instructed that although they may believe from evidence that the property in question was in fact sold by Ray to the plaintiff; yet, if they also believe that at the time of making such sale, or at any time afterwards, and before the execution of the chattel mortgage introduced in evidence, the plaintiff wrote, in his own hand writing, the bill of sale offered in evidence, and that Ray executed the bill of sale in plaintiff's presence, and with his knowledge, and delivered the same to Wilson in plaintiff's presence, without any protest being made by plaintiff against such delivery, and that said plaintiff permitted said bill of sale to remain in the possession of Wilson until after said chattel mortgage was executed; and if they also believe that at the time said mortgage was executed, the property in question was not in the actual possession of the plaintiff, but was in the possession of Albert H. Peck as bailee, and the defendants relying upon said bill of sale, and upon the credit of said property, loaned to Wilson the sum of money mentioned in said chattel mortgage, and received the said chattel mortgage as security for said loan, in good faith, and with no knowledge that the plaintiff had or claimed any interest in or title to said property, then their verdict must be for the defendants."

6.  " If the jury believe from the evidence that one Ray made a bill of sale of the property in controversy, conveying it to J. A. Wilson, and that it was done with the consent of Parliman, the plaintiff, and if you further believe that the defendants, Young & Co., were induced to loan money and take a mortgage of Wilson on said property by reason of such apparent title in Wilson, then Parliman is estopped from questioning the validity of such mortgage of Wilson to Young & Co."

From the record, it does not appear that the attention of the Court, nor the counsel for the respondent, was drawn on the trial to the question of estoppel, which has figured so largely in the argument of this case.   This question seems to have been sprung after the evidence was submitted to the jury.

The evidence in the case, which would tend to prove an estoppel,

was legitimate, so far as *the issue* was concerned, which was tendered by the complaint and met by the answer; and from the *pleadings*, no trier could imagine that such a question would arise in the case. But it did arise and is now before us in this anomalous position.

Pleadings at common law are composed of the written allegations of the parties, terminating in a single proposition, distinctly affirmed on one side, and denied on the other, called the issue. If it is a proposition of fact, it is to be tried by a jury, upon the evidence adduced, and it must correspond with the allegations and be confined to the point in issue; *vide* Bests' Principles of Evidence, §§ 229, 249, and cases there cited.

Section 118, of our Code of Procedure, p. 530, says: "The answer of the defendant must contain" * * "a statement of any new matter constituting a defense or counter-claim." Pleadings are for the purpose of advising the parties to an action what the opposite party relies upon, that he may be ready to meet it in evidence on trial; and in the States that have adopted Codes of Civil Procedure, we believe the decisions are uniform, that if a party relies upon an estoppel he must plead it. (*Gill v. Rice*, 13 Wis., 549; *Clark v. Huber*, 25 Cal., 594; *B. & M. R. R. Co. v. Harris*, 8 Neb., 140; *Waddell v. Morrill*, 26 Wis., 611; 45 Cal., 121.) Thus we see that specialties should be pleaded. Later cases sanction the idea that estoppels *in pais* should be pleaded. (*Gaylord v. Van Loan*, 15 Wend., 308; *People v. Bristol and Renslearville Turnpike Co.*, 23 id. 222.) The trial below proceeded upon the issue made by the parties, and therefore the bill of sale was admissible for the purpose of proving that issue; but if it had been offered by way of an estoppel, and been objected to by the respondent, I am of opinion it should have been, under our Code, excluded. (Section 118, p. 530, *supra*.)

But where an equitable estoppel *in pais* is not properly pleaded, and evidence is introduced without objection, in the same manner as if it had been properly pleaded, and a verdict is rendered upon the evidence, without objection, which is this case, the objection to the pleading will be deemed waived, and the case will be considered as though the estoppel had been properly pleaded. (*Davis v. Davis*, 26 Cal., 38; 23 Cal., 354.)

Parliman v. Young et al.

The able counsel of the respondent should be fully exonerated for any apparent want of skill in not objecting to testimony, which no one, however remarkable his aptitude might be for trying cases, could anticipate its use, except to determine the issue made by the pleadings. *Quaere:* Should not estoppels in *all* cases be pleaded, that the opposite party may know what he has to meet before the case is submitted to the jury?

We now come to the instructions asked by the appellants. Nos. 1, 2 and 4 of them are *simple abstract propositions of law.* The time has long since passed when counsel could quote a solid paragraph from Blackstone, Kent, Greenleaf, Chitty, or any legal authority, and ask the Judge to give it to the jury as *the law* of the case. Without taking time to discuss the question whether such abstract propositions are good law, it is sufficient to say, it is not error to refuse them. (54 N. Y., 488; 37 Ills., 341; 38 Ills., 282; 44 Ills., 312; 50 Ills., 169; and other Ills. cases; 3 Ind., and cases there cited; also 36 Cal., 404, and cases there cited.) Such is the law in every State in the Union.

Strike out the words "as in this case" in the 3d instruction, and it will not be such as the Judge should give, for the same reasons that the 1, 2 and 4th are bad, and with these words in it, should not have been given, for it assumes facts to have been proved when there was much conflicting evidence in relation thereto, and upon which it was the prerogative of the jury to pass.

The 5th and 6th instructions asked are clearly covered by the Judge's charge.

A man is said to be estopped when he has done some act which the policy of the law will not permit him to gainsay or deny. The law of estoppels is not so unjust or absurd, as it has been too much the custom to represent." (Per Taunton, J., 2 Ad. & El., 291.) Hence, estoppels must be certain to every intent; for no one shall be denied setting up the truth, unless it is in plain and clear contradiction to his former acts. (Id. 279, 289, 792; 11 Wend., 117; 4 Kent, Comm., 261, note; 4 Peters, 83.)

To establish an estoppel *in pais*, it must be shown: *1st.* That the person sought to be estopped, has made an admission or done an act, with the intention of influencing the conduct of another,

or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give, or the title he proposes to set up. *2d.* That the other party has acted upon, or has been influenced by such act. *3d.* That the party will be prejudiced by allowing the truth of the admission to be proved. And it is to be submitted to a jury to say whether on the facts the several essential parts of the estoppel are proved. (30 N. Y. (Tif.) *Brown v. Brown,* 519,) and cases there cited.)

It is the duty of the Judge to charge the law correctly, and upon all the points in the case; but the doctrine is quite venerable that it is not his duty to charge in the precise language of the request or in its terms. It is sufficient if it covers the request. The latest and highest authority on this point is: *The Continental Improvement Co. v. Stead,* 5 Otto, U. S. Supreme Court, p. 161, wherein the Court say: "Perhaps some of the abstract propositions of the defendants' counsel, contained in the instructions asked for, based on the facts assumed therein, if such facts were conceded, or found in a special verdict, would be technically correct. But a Judge is not bound to charge upon assumed facts in the *ipsissima verba* of counsel, nor to give categorical answers to a juridical catechism, based on such assumption. Such a course would often mislead the jury instead of enlightening them." * * * "It belongs to the judicial office to exercise discretion as to the style and form in which to expound the law and comment upon the facts. If a Judge states the law incorrectly, or refuses to state it at all, on a point material to the issue, the party aggrieved will be entitled to a new trial." And 6 id., p. 258, wherein the Court say: "It has been repeatedly determined by this tribunal, that no Court is bound to give instructions in the forms and language in which they are asked. If those given sufficiently cover the case, and are correct, the judgment will not be disturbed, whatever those may have been which were refused." And again on page 428, the Court say: "We do not admit that a Court is bound to give to a jury, at the instance of counsel, every philosophical remark found in text-books of the law, however wise or true they may be in the abstract, or however high the reputation of the author."

The Court, *sua sponte*, charged the jury upon this point as follows: "Or if you should find that the property was actually sold and delivered to the plaintiff, without regard to the time of the making of the bill of sale, and the bill of sale was only given to please Mr. Wilson, and was not intended by the parties thereto to convey any title, then you should find a verdict for the plaintiff." * * * "And further, if you find that the plaintiff caused or advised to the giving of the bill of sale to Mr. Wilson, and the defendants relied upon it to obtain a title to the property, then the plaintiff is estopped from asserting his title, and the defendants will be entitled to recover."

We are of opinion that it submitted this point in the case well and fairly to the jury, and was quite as favorable to the appellants, as their counsel, under the pleadings, could expect it would be.

3.  Was the jury mislead by the charge? The point relied upon in argument, upon which the most labor was bestowed by the counsel for appellants, is: The Court charged the jury that "this is an action to recover possession of personal property, called by lawyers, replevin, and the right of recovery depends upon the question, who has the right of possession? In other words, who is the owner thereof?

The argument is predicated upon the ground that the right of possession is made to depend upon the ownership, and the right of recovery to depend upon both; and that the words possession and ownership are treated as synonymous. That the same ideas pervade the entire charge.

We have carefully examined all the testimony that the record brings up, and although it is true that a party may recover in replevin, when he has only a right to the possession of the property, yet we find that in this case the issue hinged upon the question of ownership. The plaintiff alleges in his complaint, as stated before, that he was "lawfully possessed" of the property, which the defendants in their answer deny, and allege that "one J. A. Wilson was the owner and possessed of said property," and that he had given them a chattel mortgage of the same, by virtue of which they had taken possession of the property, and were entitled to retain it.

The testimony of the plaintiff tends squarely to prove that he owned it, and that of the defendants that Wilson was *the owner*. If Wilson, then, was the owner, the defendants had the lawful possession; and otherwise, if the plaintiff owned it.

The charge of the Judge was plain and clear; it submitted the case well and fairly to the jury, and we are entirely satisfied with it. The questions of fact were passed upon by the jury, and as there was evidence in the case tending to support the verdict, this court cannot say that there was not sufficient evidence to justify it.

We find no error in the record, and the judgment of the court below is

AFFIRMED.

SHANNON, C. J., dissenting.