McDERMOTT, Appellant, *vs.* BARNUM & MORELAND, Respondents.

1. An instruction which tells the jury that they may infer a certain fact from other facts proved, is not the decision of any question of law, unless the presumption is one which the law raises.

2. If A. leaves his personal property in the possession of B., and with knowledge that he is holding himself out to the world as the owner of it, stands by and permits this conduct, he will be estopped from afterwards claiming the property as his own, against parties who have trusted B. upon the faith of it; nor is it necessary that A. should have known that B. designed to commit a fraud upon his creditors.

3. A case will not be reversed because irrelevant evidence was allowed to go to the jury, unless it could have misled or prejudiced them.

4. Certified transcripts from justices of the peace are evidence, without proof of the justice's signature.

*Appeal from St. Louis Circuit Court.*

*T. C. Reynolds*, for appellant, argued at length the following, among other points : 1. The instructions given *did* not present the law to the jury fairly, nor in accordance with the former opinion of this court, and the instructions asked by appellant should have been given. 2. Irrelevant evidence was admitted, calculated improperly to prejudice the minds of the jury. 3. The transcripts from the justice of the peace should have been excluded. A justice's signature does not prove it-

self.   One of the transcripts was a nullity on its face, for want of bond and affidavit by the plaintiffs.

*Polk* and *Dayton*, for respondents.

GAMBLE, Judge, delivered the opinion of the court.

The facts of this case are stated in the report of the former decision, in 16 Mo. Rep. 115.

McDermott claims the slave in question as a purchaser from John C. Rogers & Co., in Virginia ; that firm was composed of John C. Rogers, Hugh Rogers and one Lowe.   The defendants claim as purchasers under an execution sale of the slave as the property of Hugh Rogers.

After McDermott obtained the conveyance of this, and other slaves, from J. C. Rogers & Co., he sent them, in care of one Janney, to the south for sale.   Janney sent the slave in question to Hugh Rogers, at New Orleans, for sale, and Hugh brought him to St. Louis, where he kept him in his employment for some time, and exercised over him the ordinary acts of ownership, and held himself out as the owner, until the slave was seized and sold under execution.

The defendants insisted that the whole transaction between McDermott and John C. Rogers & Co. was fraudulent, and that the circumstances under which the slave had come to the hands of Hugh Rogers, and his subsequent conduct in relation to the slave, with the assent of McDermott, authorized the seizure and sale of the slave as his property.

There was much evidence given by the defendants on the trial, to which the plaintiff objected, on the ground that it was irrelevant.

It is not intended to review at length the different instructions which the plaintiff asked, and which were refused, nor those which were given on the motion of the defendants.   The instructions on the last trial differ from those which were asked at the former trial, and which appear in the report of the case as referred to.

When the case was before decided in this court, the judg-

14—VOL. XIX.

ment was reversed on account of the giving of the fourth instruction asked by the defendant. That instruction has been changed, so that on the last trial it reads in these words : " If the jury find from the evidence, that the plaintiff himself or by his authorized agent, *in collusion and fraud with John C. Rogers & Co., or any member of said firm, against the creditors of said firm,* delivered the slave in the declaration mentioned to said Hugh Rogers, one of the firm of John C. Rogers & Co., and suffered and permitted him to retain the possession of, and to use and control the said slave as his own property; that, while said Hugh was so in possession of said slave, and controlling him as his own, he was regularly levied on and sold to satisfy one or more executions against said Hugh ; that the defendants became the purchasers of said slave at such sale, without any notice of the claim of the plaintiff, the verdict ought to be in favor of defendants." The change in the instruction was made by inserting the words in italics. The meaning of this instruction must be, that the delivery of the slave by McDermott to Hugh Rogers, and his suffering Hugh to retain and use the slave as his own, were both in fraud of the creditors of Rogers & Co., and in order that the jury, under this instruction, could find that fact, it was necessary that they should believe that the whole transaction between McDermott and Rogers & Co. and Hugh Rogers, was a mere juggling contrivance to keep the property out of the reach of the creditors of Rogers & Co. It was necessary that they should believe this, because it was impossible that the delivery of the slave to Hugh Rogers, and allowing him to treat him as his own property, could be a fraud upon the creditors of Rogers & Co., if McDermott was a *bona fide* owner. Putting his property into the hands of Hugh Rogers could not be fraudulent as to the creditors of Rogers & Co., or any other creditors, except his own. The instruction, then, as altered, although obscure in its present shape, requires the jury to find that all the transaction was fraudulent before they could, under its direction, find for the defendant.

1. The fifth instruction is, in reality, no instruction upon a question of law. Fraud, as a question of fact, was presented to the jury, and this instruction, after detailing several facts, informs the jury that if they find them to exist, they may from them infer that the sale from Rogers & Co. to McDermott was fraudulent. In other words, the jury are told that certain circumstances would justify the conclusion that a conveyance was fraudulent in fact. This is more like a summing up of evi· dence than an instruction on a question of law. When the. law presumes a fact from one or more other facts, the annunciation to the jury of that presumption is a declaration of the law of the case, and differs very materially from telling them, in a case where there is no presumption of law to guide them, that, if they believe that certain facts are proved, then they may infer the existence of the principal fact in question. I repeat that the giving or refusing such an instruction, in such a case, is not properly the decision of any matter of law.

The instructions given by the court, at the request of the plaintiff, contain a sufficient statement of the law applicable to the evidence, to enable the jury to determine the case upon its merits. The first tells them that, if they believe that McDermott was a *bona fide* purchaser from Rogers & Co., and that the slave was delivered to McDermott and continued in his possession; that he afterwards was entrusted by McDermott or his agent to Hugh Rogers for sale, and that Rogers, without authority, consent, or acquiescence of McDermott, converted the slave to his own use and claimed him as his own property, they should find for plaintiff. The third informs the jury that, if McDermott entrusted the slave to his agent, Janney, with special authority to sell him and remit the proceeds, Janney could not delegate this authority to another without the consent of McDermott, and if he did, without such consent, deliver the slave to Hugh Rogers, to be sold by him and the proceeds remitted, Rogers did not thereby become McDermott's agent, and the acts of Rogers, in relation to the slave, are not binding on McDermott, unless he knew of and assented to, or acquiesced in

such acts. The fifth informs the jury that, if McDermott acquired the slave from Rogers & Co., for a valuable consideration, he acquired a good title, although Rogers & Co. might have intended to delay, hinder and defraud their creditors, unless he knew of such intent, and made the purchase to aid them in their fraudulent intent. The sixth maintains the proposition that the conveyance is to be presumed to be *bona fide* until fraud in it is shown by evidence, and that, in considering the question of fraud, the jury are to regard the whole evidence, and only find the existence of a fraudulent intent when the whole evidence satisfies their minds of the fact.

2. The second instruction asked by the plaintiff, and which was refused by the court, lays down the propositions that, if McDermott was a *bona fide* owner of the slave, and if Hugh Rogers, being in possession of the slave, represented himself to be the owner, and used the slave as his own property, still the jury must find for the plaintiff, unless McDermott knew the facts that Rogers was so representing the slave to be his, and was using him as such, *and thereby designed to commit a fraud on his creditors or others.*

If the last words of the instruction require that McDermott should know of a design of Rogers to commit a fraud upon his creditors or others, in order to render the property subject to the debts of Rogers, the proposition is erroneous ; for if he knew that Rogers was holding himself out to the world as the owner of the slave, and was dealing with him as his own property, and he stood by and permitted this conduct of Rogers, he cannot escape the claims of Rogers' creditors, by requiring them to prove that he knew of Rogers' design to defraud them. When they have trusted him on the credit of such property, or when another person has purchased from him, the ground upon which the real owner is prevented from claiming the property is, that it would be a fraud upon the creditors or purchasers that he should be permitted to assert his claim, after having, by his silence, allowed others to treat it as the property of the possessor. The rule is in the nature of an estoppel. Taking

the meaning of the last part of this instruction to be that before stated, it was erroneous, and if it have any other meaning, it is too ambiguous to guide a jury. The fourth instruction was properly refused, as inapplicable to a case in which fraud was charged to exist in the relations between McDermott and Rogers. A title that might be valid between them, might be fraudulent and void as to the creditors of Rogers. So, the acquiescence of McDermott in Rogers' acts and representations, might have no effect upon his claim to the property, between themselves, when it would prevent the assertion of his claim against a creditor or purchaser.

The eighth instruction was properly refused. It asserts that, if McDermott acquired title to the slave in the manner stated in the evidence, that is, by conveyance from John C. Rogers & Co., and if the slave afterwards got into the possession of Hugh Rogers, in the manner, that is, by delivery from Janney, agent of McDermott, and that the possession was continued with the knowledge of McDermott, still such possession by Rogers, and the use of the property as his own, though with the knowledge of the plaintiff, does not divest the title of the plaintiff, unless it was the design and purpose of the plaintiff to aid and assist said Rogers, by his possession and use of the slave, to hinder, delay and defraud his creditors. The observations made upon the fourth instruction are applicable to this. The design to aid Rogers in cheating his creditors is not necessary to make the title to the property of the plaintiff pass by a sale for Rogers' debts, if he allowed Rogers to hold himself out as owner, and to treat and use the property as his own.

3. Objection has been made to several portions of the evidence given by the defendants, on the ground of irrelevancy. In *Lane* v. *Kingsbury*, 11 Mo. Rep. 410, in the opinion delivered by Judge Scott, it is said : " In investigations of this kind, ( a question of fraud was in the case, ) the courts should lend an unwilling ear to the objection of irrelevancy merely. If the evidence is merely irrelevant, it cannot affect the rights of an objector. It is always best for the courts to err on the

safe side." The Judge further remarks, " that when the tendency of the evidence is to mislead or improperly prejudice the mind of the jury, it must be rejected, though irrelevant to the issue."

When we are examining a case that has been tried by a jury, we are bound to presume that evidence which is irrelevant to the question they are required to decide, will have no weight in the decision, unless the natural tendency of the evidence is to mislead or prejudice the mind, so as to interfere with a correct decision of the question. In all cases in which a fact is attempted to be proved by circumstances, and not by evidence going directly to its existence, the jury must be supposed to be capable of giving a just weight to each circumstance, and it is very unsafe for a court to reject the evidence of one of the circumstances, because, in the mind of the judge, it is entitled to very little consideration. Take, as an example, the evidence given by a witness in this case, that the man who murdered Maj. Floyd was arrested in the stable of Hugh Rogers, and that the circumstance was published throughout the United States. The object in giving this evidence, was to establish notice in McDermott, a resident of Virginia, of the residence and employment of Rogers. The court could not know how far the defendants would follow up this testimony with evidence that McDermott read such publication, and therefore it would have been unsafe to reject it. If this was all the evidence to be given, to carry home to McDermott notice of the newspaper publication, then we are bound to assume that the jury were intelligent enough to see the utter absurdity of such evidence, as the foundation of a charge of notice to plaintiff of Rogers' residence.

There is upon the record some evidence so entirely irrelevant, that it might, with perfect propriety, have been rejected, but which we cannot suppose had any influence in producing the verdict, and therefore we will not, on that account, disturb the judgment. An objection was made to the relevancy of the affidavit made by Hugh Rogers, on the institution of this suit, but

that affidavit was clearly relevant to the question of, whether there was a fraudulent combination between the plaintiff and Rogers.

4. An objection was made to the competency of certain transcripts produced from a justice of the peace, because they were certified by the justice and were not sworn copies. The 21st section of the act concerning evidence, (R. C. 470,) makes certified copies from a justice evidence. It was objected to one of these transcripts, that the judgment was a nullity, because there was not a bond and affidavit appearing on the transcript. This was no objection to the evidence in this case. The proceeding was against Rogers, and the action was collateral to this.

Upon the whole case, there appears to be no question of law upon which the judgment should be reversed, and this court does not act upon the sufficiency of the evidence to maintain the positions assumed by the respective parties. The judgment will therefore be affirmed, with the concurrence of the other judges.