JAMES M. SHAW v. THOMAS S. BEEBE AND JOHN W. SIMONDS.

*Estoppel in Pais. Notice.*

An estoppel *in pais* exists when a party makes a statement to another for the purpose of inducing a certain course of action, which statement that other relies and acts upon in the manner expected, and which it would be a fraud in the party making the statement to afterwards controvert, so far as the statement affects the other's pecuniary rights.

The rule of estoppels *in pais* is equally applicable to affect the title of land as of personal property.

W. and S., by permission of a railroad company, erected a store on the land of the company, and were to own it in common. While the record title still remained in the company, S. advised W. to sell his share to L., and informed L. that if he bought it, he would be entitled to one-half of the rents. L., in reliance upon these statements of S., took a conveyance of one-half the store from W. and allowed W. $500 for it towards the latter's indebtedness to him. S. witnessed the deed from W. to L., and was aware of its contents. Afterwards S. took a lease to himself of the whole store from the railroad company. *Held,* that he was estopped from claiming, in an action of ejectment, more than half of the store as against L. or his grantees.

After the conveyance from W. to L., the latter conveyed his share in the store to another party, who entered into possession, claiming to own one-half of the property. While so in possession, S. conveyed the whole store to the plaintiff, who purchased in reliance upon the fact that the record title was solely in S., but with knowledge that L.'s grantee was in possession, and of his claim of title to one-half of the property. *Held,* that the possession of L.'s grantee with such a claim of title, was sufficient notice to the plaintiff of his claim, to put the plaintiff on inquiry, and, therefore, having purchased without making proper inquiry, he was, equally with S., estopped from claiming more than half of the store.

EJECTMENT for a store, and the land upon which it stood, in Rupert. The case was referred, and the referee reported the following facts: David Sheldon, who owned the land in question previous to May 1st, 1852, on that day conveyed it, with other land surrounding it, to the Rutland and Washington Railroad Company. About the time of this conveyance to the railroad company, that corporation gave permission to Henry Shaw and Washington Kinne to erect a store on the land in question. The parties to whom this permission was given, agreed between themselves that Henry Shaw should erect the

store, using certain materials which Washington Kinne had procured, for which Shaw was to pay Kinne, and that Kinne should allow to Shaw four hundred dollars, as one-half of the cost of the store, and that when this sum was paid to Shaw, he was to convey an undivided half of the store to Kinne. Shaw proceeded with the erection of the store, and finished it in the course of that season, and Kinne furnished materials to an amount of something less than four hundred dollars, which amount so furnished he charged to Henry Shaw. Washington Kinne never paid Henry Shaw for building half of the store, except as above stated; and though their accounts were settled in 1854, Kinne was indebted to Shaw, so that the price for building half of the store still remained unpaid. Washington Kinne, however, always expected to have half of the store in the end, and Henry Shaw expected he would have it.

After the completion of the store it was occupied by Washington Kinne until June 6th, 1854, during which time he paid Henry Shaw rent for one-half of the store, at the rate of forty dollars a year, and Henry Shaw and Washington Kinne had the store insured to them jointly, and they each paid half the taxes on it. In the spring of 1854, Henry Shaw stated to the defendant Beebe that Washington Kinne owned half of the store.

On the 6th of June, 1854, Washington Kinne, being in failing circumstances, upon the advice of Henry Shaw, executed a deed of half the store to his father, Lyman Kinne. This deed was witnessed by Henry Shaw, who then knew substantially its contents, but Lyman Kinne was not present at the execution of that deed—had not asked for it—knew nothing about it, and paid nothing for it; though he was liable as surety for Washington Kinne to a large amount, far exceeding the value of one-half of the store. The deed was, about four days after its date, delivered by Washington to Lyman Kinne, and Henry Shaw, who was then present, told Lyman Kinne that half the rents would go to him and the other half to himself, and Lyman Kinne subsequently agreed to allow Washington Kinne five hundred dollars for the store.

Henry Shaw occupied the store after the deed to Lyman

Kinne, about two weeks ; and then sold the goods to Harvey Sheldon.

Harvey Sheldon occupied the store about four months, during which time, Henry Shaw told the defendant Beebe that Lyman Kinne owned one-half of the store and he, Shaw, the other half.

Sheldon, about November 11th, 1854, sold the goods to the defendant Beebe, who occupied the store from that time for about two years and a half.

On January 16th, 1855, Lyman Kinne executed a deed of one-half of the store to Marvin & Van Alstyne.

While Beebe occupied the store he paid rent for one-half of the store to Lyman Kinne, and to Marvin & Van Alstyne, after the conveyance from Kinne to them, and was always ready to account to Henry Shaw for the other half of the rent. During Beebe's occupancy Henry Shaw proposed to him at one time that if he would buy Kinne's half of the store, and at another if he would buy Marvin & Van Alstyne's half, he would pay Beebe three hundred dollars for it.

On the 18th of August, 1855, Henry Shaw took a lease from the Rutland and Washington Railroad Company of the whole store, and the land on which it stood, for such period as it should be occupied as a store. Shortly after taking this lease Henry Shaw informed Beebe of the fact, and that he should claim the whole store and the whole rent of it, in virtue of the lease, admitting, however, that Washington Kinne had paid him for half of the store; but claiming that Washington Kinne owed him, and saying that he calculated to get his pay then.

On the 21st of January, 1857, Henry Shaw executed to the plaintiff a quit-claim deed of the whole premises in question.

In March, 1857, Marvin & Van Alstyne executed to the defendant Beebe a deed of half of the store, shortly after which Beebe sold the goods to the defendant Simonds, and rented to him an undivided half of the store, and Simonds remained in possession up to the time of trial, having paid Beebe rent for one-half of the store.

On the 1st of November, 1858, and before the commencement of this suit, the plaintiff demanded of both the defendants

possession of the store, which they refused to deliver up to him.

Upon these facts the county court, at the June Term, 1861, KELLOGG, J., presiding, rendered judgment, *pro forma*, for the defendants, to which the plaintiff excepted.

*Fayette Potter*, for the plaintiff.

*H. Canfield* and *E. B. Burton*, for the defendants.

ALDIS, J. It is to be observed in this case that at the time Washington Kinne deeded one-half of the premises in question to Lyman Kinne, the record title was in the railroad company. Washington Kinne was in possession of the land, claiming to own one-half, and that Henry Shaw owned the other half; but as neither of them had received any deed or lease from the railroad company, there was no way by which a purchaser could ascertain the respective interests of Washington Kinne and Henry Shaw in the land, except by inquiry of them. Hence Lyman Kinne, when he took the deed from Washington Kinne, was obliged to rely upon the statements of Washington Kinne and Henry Shaw as to their respective interests in the land.

Washington Kinne deeded him half of the store and land. Shaw was present when the deed was made, advised Washington Kinne to make it, witnessed it, was present when it was delivered to Lyman Kinne, and told him that half the rents would go to him, and the other half to himself.

The defendants claim under a title derived from Lyman Kinne, and insist that these acts and declarations of Henry Shaw estop him and his grantee, the plaintiff, from claiming title to the land.

1. Is Henry Shaw estopped? An estoppel *in pais* exists when a party makes a statement to another, which that other relies and acts upon, and which it would be a fraud in the party making the statement to afterwards controvert, so far as the statement affects the other's pecuniary rights.

In the case at bar, if Lyman Kinne, relying on such statements of Shaw, that Washington Kinne owned half the land, had

then and there paid Washington Kinne the value of the land, $500, no one can doubt that it would have been a fraud for Shaw to claim to own the whole of the land himself.

The case finds that Lyman Kinne afterwards agreed to allow Washington Kinne $500 for the lot; and that he was at the time liable for him as surety to a much larger amount than $500. The time he so agreed is not distinctly stated, nor is it expressed in the exceptions that he did so relying upon Shaw's statement; but we think a reasonable construction of the bill requires us to find that he did so agree with his son, relying on the declarations of Shaw. We find these declarations of Shaw are stated to have been continued, and Washington Kinne's title to half the store expressly recognized and declared by him to exist up to September or October, 1855, and the sale to Lyman Kinne by his son was June 6th, 1854, fifteen months previous. And during this fifteen months the land had been sold by Lyman Kinne to Marvin & Van Alstyne, and the defendant Beebe had taken possession of the store, holding one-half under Lyman Kinne's title and as tenants of Marvin & Van Alstyne, to whom Lyman Kinne had deeded the one-half, with covenants of warranty. It would seem a forced construction of the exceptions to say that Lyman Kinne in allowing his son $500 for the land did not rely on Shaw's statements. He could not ascertain the interest of his son and of Shaw except by their statements.

It is to be noted, too, that when Shaw witnessed the deed to Lyman Kinne, he fully understood its contents.

Under these circumstances we think it would be fraudulent in Henry Shaw to set up a claim to that half of the land which he had thus induced Lyman Kinne to purchase and pay for. All the elements which constitute an estoppel in pais exist here—the statements to induce the purchaser to buy—reliance upon them —and pecuniary injury to the party so relying on them, if the maker of them be permitted to controvert them and set up title in himself.

We are aware that there have been decisions questioning the extension of this doctrine of estoppel in pais to affect the title to lands. Such seem to be some of the decisions in New York in 1 Hill 14, and 6 Hill 17. But a summary of the decisions in

14

Shaw *v.* Beebe et al.

the notes to Smith's Leading Cases, 1 Vol., p. 538, shows that the great weight of authority is consonant with the views we have here expressed. All concur that such facts constitute an estoppel as to personal property, and upon reason and principle to prevent fraud and promote justice, the same rule should be extended to real property.

2. The second question is,—is the grantee of Henry Shaw, holding under a quitclaim of his right and title to the property, and getting his title through Henry Shaw long after the deed to Lyman Kinne, also estopped. It is claimed for him that he was not privy to the statements, and that, when he bought, Henry Shaw had procured from the railroad company a lease of the land, and was the apparent owner of record. If the case rested solely here, we should doubt as to the reasonableness of estopping him, because he held through Henry Shaw's title, and took only the right and title he had—that appearing of record to be title to the whole instead of half.

But when he took his deed the defendants were in possession under Marvin & Van Alstyne's title, derived from Lyman Kinne, and claiming to hold possession of half, and paying half the rents under that title, and claiming the right of Henry Shaw to such half of the land. Now this claim and possession under the Lyman Kinne title was notice to him, and put him on inquiry, and affected him with knowledge of all the facts which he would have ascertained if he had inquired of the tenants in possession.

We need not refer to the frequent decisions of our state courts illustrating this principle. We deem it applicable here, and that the plaintiff must be deemed a purchaser with notice of the claim and possession under the Lyman Kinne title, and taking only the right and title of Henry Shaw, subject to the title of Lyman Kinne precisely as Henry Shaw held his title.

As this view of the case affirms the judgment, we need not consider the other questions in the case.

Judgment affirmed,