JOHN P. THISTLE, TRUSTEE OF MARY H. THISTLE, Respondent, WILLIAM H. BUFORD, Appellant.

1. *Estoppel — Privity of estate.* — Where the owner of land would be estopped, by reason of his own acts and conduct, from setting up title thereto, those in privity with him, unless purchasers for value without notice, labor under a similar disability.

*Appeal from Johnson Court of Common Pleas.*

*Nickerson, Elliott & Blodgett,* for respondent.

*Hicks, Crittenden & Cockrell,* for appellant.

BLISS, Judge, delivered the opinion of the court.

The plaintiff brings ejectment, and the defendant sets up and clearly establishes the following facts: The title was in Archibald Thistle, father of the plaintiff, who gave the land

to his son, John P. Thistle, but executed no conveyance. The latter entered into possession, made improvements, had the land listed in his own name, paid the taxes for several years, and exchanged the same with one Vickers for an equal quantity lying more convenient, each party executing conveyances and taking possession accordingly. During all this time Archibald Thistle treated the land as his son's and approved of the exchange. John P. Thistle had taken possession of the land as his own in 1857, and the exchange was made in March, 1860. In December, 1865, Vickers conveyed to defendant Buford; but in July previous Archibald, the father, had conveyed to John P. Thistle, in trust for his wife, Mary H., certain lands including the parcel in controversy, and died before the commencement of this suit. From his declarations before and after this conveyance there is reason to believe that he did not intend to embrace this land; there is no other way to relieve his memory from the charge of a deliberate and premeditated fraud. Previous to this convey- ance in trust Buford had rented the Vickers land, including that in controversy, and in 1864 applied to Archibald, as agent of his son, to rent also his son's. Archibald Thistle then pointed out to him the lines, designating that exchanged and conveyed to Vickers, being the land now in controversy, as belonging to Vickers, and the land received in exchange as belonging to his son. Buford told him he would like to buy both Vickers' and his son's land, and asked him if the title was good. He was assured that it was perfectly good, and among other things the father explained that he himself had entered the land, had given it to his son, and his son had traded it to Vickers in order to straighten their lines. In the spring of 1865 Buford again rented the land belonging to John Thistle, and, keeping up his intention to purchase the Vickers property, again inquired in regard to the title to the land in controversy, of Archibald, who assured him that John could make a good title; and in 1866, after the purchase by Buford, and after the trust deed, he again went to Archibald Thistle, and told him there was a difficulty about the title to the land deeded by John to Vickers. Thistle replied that he need not be uneasy about it; that he had given it to John, who traded

it to Vickers ; that it was not included in the trust deed to John's wife, for he had told the attorney who drew the deed to leave it out, and he would make John's deed good. In August, 1866, the said Archibald Thistle, apparently acting upon the supposition that his statement to Buford was true, executed to him a quit-claim deed of the land in dispute, reciting his gift to John and John's conveyance to Vickers. It is probable that the father acted in good faith and did not design to enable John and his wife to perpetrate a fraud upon defendant. John Thistle also uniformly, after his conveyance to Vickers, treated the land as sold, described it to defendant as Vickers' land, and made no claim to it until just before the commencement of this suit, when a difficulty had arisen in regard to his right to dig coal.

It is also shown that before the exchange of the lands John P. and his wife had been in possession of the land so conveyed to Vickers some four or five years, and claimed it as their own, and also before as well as after the trade, the said Archibald said the land was John's, and that he entered it for him ; that he was present when the trade was made and before the deeds were executed, and approved it, saying that it was a good thing for his son and Vickers to make it, as it would save fencing, etc.

The plaintiff possesses the legal title in trust, etc., and his counsel have with much ingenuity interposed many considerations why, as trustee, he should not be estopped from asserting it. But it should first be noted that the *cestui que trust* has no special equity. She is not a purchaser for a valuable consideration, no part of her estate has gone into these lands, and the moving inducement to the gift was her relationship to John P. Thistle and his father. That they or either of them would be estopped from asserting title, cannot be doubted. John is estopped by his conveyance to Vickers ; and had the conveyance to his wife's use been to his own use, it would have inured to the benefit of his grantor. Archibald Thistle induced Vickers to exchange with John P. by calling the land John's and making Vickers believe it was his, and his continued assertion that it belonged to John induced the defendant to buy of Vickers. There can be no plainer case for the application of the doctrine of estoppel *in pais*, were

he himself, without having made any conveyances, the plaintiff in this action. Those in privity, unless purchasers for a good consideration without notice, labor under the same disability. (Shew v. Beebe, 35 Verm. 205; Snodgrass v. Ricketts, 13 Cal. 359; 2 Smith's Lead. Cas. 756.) The beneficiary, then, of the trust deed under consideration, cannot avail herself of the attempt to defraud the defendant. The disability of the voluntary grantor to her use binds her as well.

The judgment of the court is reversed and the petition dismissed. The other judges concur.