YERKES, Appellant, *v.* HADLEY *et al.*, Respondents.

**Married Women—Mortgages—Covenants—After Acquired Title**
**—Estoppel.**

> A married woman, who, in this territory, can enter into an agreement
> with reference to property the same as if unmarried, executed, with her
> husband, a mortgage containing general covenants of warranty to se-
> cure an obligation of which she was a joint debtor. After the mort-
> gage, which, in Dakota, creates only a lien, had been foreclosed, and the
> mortgagee had obtained the sheriff's deed, the wife acquired title to the
> land. *Held,* under such a mortgage deed the title inured to the benefit
> of the mortgagee, and as against him she was estopped from setting it up.

(Argued May 10, 1888; opinion filed October 5, 1888.)

Appeal from the district court of Cass county; Hon. W. B.
McCONNELL, Judge.

*Stone & Newman,* for appellant.

The foreclosure of the mortgage, and the sheriff's deed there-
under, vested in appellant the "same estate that was vested in
the mortgagors at the time of the execution of the mortgage, or
at any time thereafter," and such deed is a complete bar against
each of the defendants. C. C. Pro. §§ 614–623.

The defendant Kate Irene Hadley, although a married woman,
is competent to enter into "any engagement or transaction with
any other person, respecting property, which she might, if un-
married," and is bound by all her engagements and covenants
the same as if single, and the same as any other person. C. C.
§ 79; section 661, as amended 1881.

Section 79 places husband and wife on an absolute equality
with each other. The language could not have been broader.
It makes the wife liable on her covenants, on her husband's deed
or mortgage, to the same extent that he is liable on his cove-
nants in her deed. The husband has always been held liable
upon his covenants in the wife's deed; and not only by way of
estoppel, but in damages for breach. *Snoddy* v. *Leavitt,* Ind.
5 N. E. Rep. 16.

Under section 661 there can be no question as to Mrs. Hadley being bound by her covenants.

Keeping in mind that Mrs. Hadley's rights and liabilities in the case at bar are precisely the same as would be those of any other person, married or unmarried, section 632, subd. 4, provides: "Where a person purports by a proper instrument to grant real property in fee-simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successor." This provision includes a mortgage like the one at bar. *Association* v. *Fierra*, 48 Cal. 572.

Again, section 1727, subd. 2, declares: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in the same manner as if acquired before such execution." See 48 Cal. 572, *supra; Orr* v. *Stewart*, (Cal.) 7 Pac. Rep. 639.

Kate Irene Hadley, being competent to bind herself by her covenants, is estopped to show that she assumed any less or other liability than appears on the face of the note and mortgage. Big. Est. cc. 7, 11; *Sprigg* v. *Bank of Mount Pleasant*, 10 Pet. 257; Herman, Est. § 585; *Tefft* v. *Munson*, 57 N. Y. 97; *Honn* v. *McCormick*, 57 N. Y. 310; *Knight* v. *Thompson*, 125 Mass. 25.

Besides, the defendant Kate Irene Hadley having presumably incurred the debt secured by the mortgage on the strength of her statement and covenants, it would be inequitable to allow her, after having received the benefit, to set up her after-acquired title, and thus deprive the appellant of his security. She is estopped so to do.

The cases in which a married woman has been allowed to set up her after-acquired title as against her deed or mortgage of her husband's lands, in which she joined, place the rule upon the ground that she is not *sui juris*, and, not being competent to bind herself by the covenants in her husband's deed, she is not therefore estopped to assert her after-acquired title. Big. Est. (2d Ed.) 276; Her. Est. 581, 582; *Bank of America* v. *Banks*, 101

U. S. 240; *Kitchel* v. *Mudgett*, 37 Mich. 81; *Gregory* v. *Gregory*, 16 O. St. 560; *Childs* v. *McCesney*, 20 Ia. 431; *O'Neil* v. *Vanderburg*, 25 Ia. 104; *Thompson* v. *Merrill*, 10 N. W. Rep. 796; *Edwards* v. *Davenport*, 20 Fed. Rep. 756.

In Indiana, she cannot bind herself by covenants in a deed of her husband's land, nor contract except with reference to her separate estate. *Shumaker* v. *Johnson*, 35 Ind. 33; *Mattox* v. *Highlander*, 39 Ind. 95; *McCormich* v. *Hunter*, 50 Ind. 186; *Snoddy* v. *Leavitt*, 5 N. E. Rep. 13.


*Taylor Crum*, for respondent Mrs. Hadley.

Under C. C. § 1706, a mortgage is a mere lien and conveys no title.

In section 1736 the form of a mortgage is given, and any further provisions that may be interpolated into it are mere surplusage. The rule of the common law "that by a mortgage of real property the legal title is conveyed," is abrogated. *Everett* v. *Buchanan*, 2 Dak. 267, 6 N. W. Rep. 439, and 8 N. W. Rep. 31; *Davidson* v. *Cox*, 9 N. W. Rep. 95.

The case of *Vallejo Land Association* v. *Elias Viera*, cited and relied upon by counsel to sustain their position, was under a different statute.

Under the California law a mortgage could be a conveyance purporting to convey "in fee-simple absolute," while under our Code a mortgage can under no circumstances be anything more than a lien. Section 1706; *Davidson* v. *Cox*, *supra*.

The courts are unanimous in this: that "an outstanding paramount title subsequently acquired by the mortgagor does not inure to the benefit of the purchaser at the foreclosure sale, or to the mortgagee, although while the relation of mortgagor and mortgagee existed, a title acquired subject to the mortgage would go to strengthen the mortgage security, and that, when that relation is extinguished by foreclosure, the mortgagor is under no obligation to protect the purchaser's title." 2 Jones, Mort. §§ 1581, 1646, 1647; *Jackson* v. *Little*, 56 N. Y. 108, 112; *Clark* v.

*Baker,* 14 Cal. 627–629; *San Francisco* v. *Lawton,* 18 Cal. 474.

When we consider the *status* of a mortgage,—that it is only a lien, divorced from all covenants which pass with the land, and in no sense a transfer,—the doctrine of the courts in regard to judgment liens and mortgages without covenants of warrant and sale apply to mortgages under the Code. The doctrine is not, therefore, new, that an outstanding independent title, acquired after the foreclosure and sheriff's deed, does not estop the mortgagor, or inure to the benefit of the mortgagee.

So far as the mortgage proper was concerned, the words of section 1727 could have no effect after foreclosure and sheriff's deed. *Campbell* v. *Walpole,* 3 Dak. 184, 13 N. W. Rep. 567.

The estate of the mortgagor and judgment debtor after the sale stands upon the same footing. As to the rights of the judgment debtor, see *Everett* v. *Buchanan,* 2 Dak. 264, 6 N. W. Rep. 439, and 8 N. W. Rep. 31; *Thrift* v. *Delaney,* 10 Pac. Rep. 478.

In both cases there is the right of redemption. Section 354, C. C. Pro.

By the sheriff's deed appellant was vested with the same estate that was vested in the mortgagor at the time of the execution of the mortgage. Section 623.

The lien having been extinguished by the sale, (section 1718, C. C.,) no lien existed after the sale, and passing of the sheriff's deed; and, when there was no lien, there was no mortgagor, (as a mortgage is a lien and nothing more;) and, the mortgage having been extinguished, there could be no mortgagor or mortgagee, and consequently section 1727 does not apply in this case. *Goodenow* v. *Ewer,* 16 Cal. 469, 470; *Everett* v. *Buchanan,* 2 Dak. 267, 6 N. W. Rep. 439, and 8 N. W. Rep. 31.

The lien of a judgment attaches only to the actual interest the judgment debtor had in the land, and an after-acquired title will not inure to the purchaser at a sheriff's sale. *Westhemer* v. *Reid,* 15 Neb. 662, 19 N. W. Rep. 626. See, also, *Jackson* v. *Hagaman,* 1 Wend. 502; Rorer, Judicial Sales, (2d Ed.) §§ 1073, 1298–1300; *Montgomery* v. *Whiting,* 40 Cal. 298, 299; *Emerson* v. *Sansome,* 41 Cal. 555; *Kenyon* v. *Quinn,* Id. 329.

Mrs. Hadley would not be estopped from securing an independent outstanding title. *Kitchell* v. *Mudgett*, 37 Mich. 81.

It is true a married woman here stands upon an equal footing, so far as contracts are concerned, with any other person. Yet as to the homestead both husband and wife are under legal disability.

This brings the case at bar directly in line with the Michigan statute in respect to "the consenting" of the wife to the alienation of the homestead. In order for Mrs. Hadley to legally signify her consent to the mortgaging of the homestead, she must concur in and sign the same joint instrument with her husband. The instrument, thus executed, would be proper and suitable to signify her consent to the alienation. We maintain that although, in the absence of fraud, she might be liable on the covenants of warranty in the same manner, and to the same extent, as her husband, as upon a contract which she is competent to make, her liability, measured by estoppel, would not extend beyond the interest she had in the land conveyed.

This doctrine is sustained by *Snoddy* v. *Leavett*, 5 N. E. Rep. 16. This is the doctrine of estoppels generally. *Van Rensselaer* v. *Kearney*, 11 How. 326. See, also, *Leicester* v. *Rehoboth*, 4 Mass. 180; 6 Wait's A. & D. 679, 681; *Owen* v. *Bartholomew*, 9 Pick. 520; *Lounsberry* v. *Depew*, 28 Barb. 44; *Reynolds* v. *Gardner*, 66 Barb. 310.

In order to make out an estoppel, it must not only appear that the representation was made with knowledge of the facts, but the party to whom it was made must have been ignorant of the truth of the matter, and also destitute of all convenient means of acquiring such knowledge by the use of ordinary diligence. 6 Wait's A. & D. 684.

Had the plaintiff at the time of the execution of the mortgage examined the title, he would have discovered there was none.

CARLAND, J. The record in this action discloses that on and prior to December 8, 1881, Lafayette Hadley and Kate Irene Hadley, his wife, were in possession of and lived upon lot 17,

in block 4, in the city of Fargo, in this territory; that on said date they executed to Harman Yerkes their joint and several promissory note for $500, with interest at 10 per cent. per annum, payable annually, which note was to be payable in 5 years from the date thereof. The interest to become due was evidenced by joint and several interest coupon notes, attached to said original note, and signed by the makers thereof. To secure the payment of this note, and the interest to become due thereon, said Lafayette Hadley and Kate Irene Hadley made and executed to said Harman Yerkes their mortgage on the premises hereinbefore mentioned, which mortgage was duly recorded on the said 8th day of December, 1881, as provided by law. The mortgage in form was what is termed a mortgage deed, being an absolute deed of bargain and sale, with joint covenants of seizin, quiet possession, and warranty. It also contained the usual defeasance common to such instruments. Default having been made in the conditions of said mortgage, it was duly and legally foreclosed, and the land in dispute was purchased by Harman Yerkes on the 11th day of March, 1884. No question was raised as to the regularity of the foreclosure proceedings. A sheriff's deed was duly issued to the purchaser on March 20, 1885. Claiming title through said foreclosure, Harman Yerkes commenced this action to obtain possession of said lot 17. The defendants, by their answer, averred, and such was the proof on the trial, that on the 10th day of June, 1878, the Northern Pacific Railroad conveyed said lot 17 to one A. H. Moore, which conveyance was duly recorded May 31, 1880; that said A. H. Moore conveyed said lot by quitclaim deed to Robert Hadwin, on March 11, 1879, which quitclaim deed was duly recorded August 17, 1883; that on the 12th day of June, 1885, said Robert Hadwin granted and conveyed said lot to said Kate Irene Hadley, which conveyance was duly recorded on August 15, 1885. At the trial the court found for the said defendant Kate Irene Hadley, and adjudged that she was the owner of said lot. From this judgment appellant appealed to this court.

It will be seen that the facts thus stated raise the single ques-- tion as to whether the title acquired by Kate Irene Hadley sub- sequent to the execution and foreclosure of the mortgage given by her on the 8th day of December, 1881, inured to the benefit. of the appellant, Harman Yerkes. In considering this question, we must bear in mind that Kate Irene Hadley was a joint debtor with her husband, so far as the record discloses. She signed the note, and the mortgage contained the following con- dition: "Provided, nevertheless, that if the parties of the first part, their heirs, executors, or administrators, shall pay or cause to be paid to the said party of the second part, his heirs,. executors, administrators, or assigns, the sum of seven hundred and forty-six dollars, according to the conditions of six promis- sory notes of even date herewith." From all that appears from the record, Kate Irene Hadley may have received all of the con- sideration for the mortgage. This being so, she had the author- ity, under the laws of this territory, to execute a mortgage to secure said indebtedness, in the same manner as if she were unmarried. Section 661, Civil Code, as amended by section 2, c. 2, Laws 1881; section 79, Civil Code. We cannot presume that she was executing a mortgage on her husband's property, for the reason that it appears that her husband never had any ownership in the property mortgaged. Having the same rights as an unmarried woman in regard to the granting or incumber- ing of her property, Kate Irene Hadley could make the mort- gage to Harman Yerkes, and could bind herself by any lawful covenant inserted therein, the same as any other person. The authorities which hold that a married woman may set up an after-acquired title as against her deed and mortgage, and which also hold that she is not estopped by the covenants of warranty in a deed of her husband's lands to set up an after- acquired title as against the deed which she has signed, place the rule upon the ground that she is not *sui juris,* and hence cannot be considered as authority in jurisdictions where mar- ried women may "make any engagement or transaction with any other person respecting property, which she might if un--

married." Civil Code, § 79. It must be conceded, therefore, that Kate Irene Hadley had the power to bind herself by the covenants contained in the mortgage to Yerkes. This being so, what effect would the covenants have upon title to said lot, acquired by her at any time subsequent to the execution of the mortgage? There can be no doubt but that the covenants of warranty would forever estop Kate Irene Hadley from asserting an after-acquired title to the premises in question. It would estop any other person; why not her? But it is claimed that, she having acquired the title that she sets up subsequent to the foreclosure of the mortgage, the estoppel does not apply; that, in order to have the after-acquired title inure to the benefit of the purchaser at foreclosure sale, it must have been acquired while the relation of mortgagor and mortgagee existed; and our attention is called to the case of *Jackson* v. *Littell*, 56 N. Y. 108. In that case the mortgage did not contain covenants of warranty, and it was decided that title acquired by the mortgagor subsequent to the foreclosure of the mortgage did not inure to the purchaser at the foreclosure sale; but the court further says: "Different considerations would apply when the mortgage contained covenants of warranty. In that case the consideration paid would represent the value of the land as warranted, and the mortgagor would be estopped from setting up an after-acquired title against which he covenanted in the mortgage." If we once admit that Kate Irene Hadley had the power to bind herself by the covenant of warranty in the mortgage, then the result naturally and necessarily follows that she never afterwards could say that she did not create a lien on the premises mentioned.

The respondent, however, insists that as a mortgage in this territory does not convey any estate in the premises mortgaged, but creates only a lien, the covenants of warranty in the mortgage in question are mere surplusage. We think that the words in the mortgage purporting to grant an estate in the premises are unnecessary, under the laws of this territory, but we cannot see why, if a mortgagor desires merely to create a lien on his

estate, he may not warrant the title to the estate upon which he proposes to create the lien. It certainly would oftentimes be an inducement to a person to loan him money. When these covenants are inserted in a mortgage it must be presumed that they form part of the consideration for which the loan was made, and for that reason the mortgagor may never say that he did not create a lien upon the premises mortgaged. Why may not the mortgagor in a mortgage which merely creates a lien covenant that he is seized in fee, and that he will forever warrant and defend the title to the premises mortgaged against the lawful claims of all persons whomsoever? Are they not covenants for the breach of which a personal liability is incurred? and, if so, has not Kate Irene Hadley broken her covenant? and, if she has broken the covenant, has not the very circumstance arisen upon which the doctrine of estoppel in these cases rests? In *Van Rensselaer* v. *Kearney*, 11 How. 297, the court, after reviewing all authorities, English and American, as to what words in a grant of real property would operate as an estoppel so as to prevent the grantors from setting up after-acquired title, said: "The principle deducible from these authorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication,— the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him in good faith and fair dealing should be forever thereafter precluded from

gainsaying it. The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of every one. And, although it debars the truth in the particular case, and therefore is not infrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt and pledged their credit, or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak." Adopting the reasoning of the learned court, let us look at the facts in the case at bar. Kate Irene Hadley covenanted with Harman Yerkes that she and her husband were seized in fee of the premises, and that she would warrant and defend that title against all lawful claims of any person whomsoever. She said to Harman Yerkes, and to whoever should become the purchaser at the foreclosure sale: "We are seized in fee of the land mortgaged. I will warrant and defend any title you may obtain through this mortgage." Harman Yerkes parted with his money on the strength of such representation. To now say that she could set up a title hostile to Yerkes would be to convict her of a previous falsehood, and deny an affirmation upon the faith of which Yerkes had dealt and expended his money. It is the fact that the covenant or affirmation was made, not that an estate in the premises was conveyed, that creates the estoppel. By what sort of reasoning can it be argued that the covenant is destroyed by foreclosure and sale? What destroys it? The covenant says she will forever warrant and defend; and when Kate Irene Hadley made the covenant in the mortgage in question, she forever put herself in a position in which every principle of law, reason, and morality will compel her to stand. We do not think the fact that mortgages in this territory are mere liens, and do not convey an estate in the land, makes any difference

with the operation of the covenant of warranty, when inserted in the mortgage. The mortgage operates on the estate concerning which the representations are made for the purpose of security, and the mortgage which only creates a lien may result in an absolute conveyance of the property, just as much as if the mortgage had conveyed a conditional estate in the first instance. *Clark* v. *Baker*, 14 Cal. 633; *Clark* v. *Boyreau*, Id. 636. In the case last cited the court said, referring to the case of *Clark* v. *Baker, supra:* "We there held that it was immaterial whether the mortgage was regarded as a conditional estate, as at common law, or as containing a mere lien or incumbrance, as by the law of this state; that though by our law the title does not pass, yet the lien created operates upon the property in a way precisely equivalent to that which would follow if the instrument transferred the legal title; that whatever in the instrument treating it as a conveyance would operate to transfer a subsequently acquired title to the grantee, must equally operate, treating the instrument as a lien or incumbrance, to subject such acquired interest to the purposes of the original security." The view we have taken as to the effect of the covenants contained in the mortgage in question render it unnecessary to determine the force and effect of section 1727, subd. 2, of our Civil Code, upon property acquired by the mortgagor subsequently to the execution of the mortgage. We are clearly of the opinion that —certainly as against Harman Yerkes—Kate Irene Hadley is estopped from setting up an after-acquired title to the premises in controversy, irrespective of the time when said title was acquired by her, and that judgment ought to have gone for the plaintiff at the trial. All concur.