## KEMPER PEABODY *vs.* LLOYDS BANKERS.

Opinion filed June 5th, 1896.

**Estoppel in Pais.**

Where A., who furnished the money to buy a stock of goods, bought them in the name of B., and thereafter carried on the business in B.'s name as manager, ordering and paying for goods in his name, signing his name to checks, making credit statements in his name, having his name printed on the paper on which letters were written to merchants who sold goods to the business and in every way created the false appearance that B. was the owner of the stock and the business; and where it appeared that certain attaching creditors, who seized the property as B's property, had sold the goods for the unpaid portion of the purchase price of which they attached, relying upon the appearance of B's ownership of the stock and of the business so created by A., a portion of the goods being the identical goods so sold by them to B.,—*held*, that A. was estopped, as against such creditors, from setting up ownership of the goods.

**Estoppel Against Pledgee Chargeable with Knowledge.**

*Held*, further, that the same estoppel was operative against a receiver of a creditor of A's who accepted a pledge of the goods from A. as his property before the attachments were levied, no value having been parted with by the pledgee at the time of accepting the pledge, and it appearing that he knew at that time that A. had created this false appearance of B's ownership of the property, so that he, the pledgee, was chargeable with knowledge of the fact that, owing to A.'s conduct, estoppels might have arisen in favor of B.'s creditors.

**Estoppels Bind Privies.**

As a general rule, estoppels bind privies as well as those who create them.

Appeal from District Court, LaMoure County; *Rose*, J.

Action by Kemper Peabody, as state examiner, plaintiff, and Winston, Farrington & Company and Duluth Dry Goods Company, each intervenors and appellants, against Lloyds Bankers and F. M. Kinter as receiver of Lloyds Bankers, defendants and respondents.

This action was originally commenced by Kemper Peabody as state examiner against Lloyds Bankers a banking corporation under the state laws, to wind up the affairs of the corporation, defendant, and to forfeit its charter. The defendant F. M.

Kinter, was appointed in said action as receiver of said Lloyds Bankers, and thereafter as receiver took possession of a certain stock of general merchandise in the City of LaMoure claimed to belong to Myron R. Isham. About this time Winston, Farrington & Co., and the Duluth Dry Goods Co., creditors of Isham who had sold him some of the goods in question, each commenced an action against Isham and attached the property in question in the hands of the receiver, having first obtained an order permitting said attachment from the Judge of the Fourth Judicial District, acting in the place of the Judge of the Fifth Judicial District, who was at that time absent from the state. Upon the return of the Judge of Fifth Judicial District, he made an *ex parte* order without notice, directing the sheriff to forthwith turn over said stock of merchandise attached to the receiver. Thereafter an order was made by the court permitting these interveners to file their complaints in intervention and directing that the receiver hold the property or its proceeds until the final determination of this action and that the lien of interveners thereon be preserved in the hands of the receiver and that the receiver be brought in as a party defendant. In the actions against Isham, judgments were obtained and executions upon said judgments returned unsatisfied. In this action there was judgment that the defendant Kinter as receiver of the Lloyds Bankers had a first lien, preferred and paramount to any claim of interveners upon all the property in controversy. From the judgment the interveners appeal.

Reversed.

*Newman, Spalding & Phelps,* for appellants.

The rights of Kinter as receiver are no greater than would have been the rights of Lloyds Bankers, had no receiver been appointed. High. on Rec. § § 204, 205. Defendants are estopped to claim the goods as to intervener by the representations of Lloyds Bankers. *Stevens* v. *Ludlow,* 24 Am. St. Rep. 210 and note 2 Herman on Estoppel, 795. Wilson is also estopped.

*Wellend Canal Co.* v. *Hathaway*, 24 Am. Dec. 51; 2 Herman on Estoppel, 752-767, Kinter claimed under Wilson upon a contract which had no new consideration and with full knowledge of the facts, did not stand in the relation of a purchaser of the property in good faith and is estopped. 2 Herman on Estoppel, 587-793; *McCrary* v. *Remsen*, 54 Am. Dec. 194; *Parker* v. *Crittenden*, 37 Conn. 148; Bigelow on Estoppel, 493; *Strachen* v. *Foss*, 42 N. H. 47; *Crane* v. *Turner*, 67 N. Y. 467; *Westbrook* v. *Gleason*, 79 N. Y. 23; *Viele* v. *Judson*, 82 N. Y. 32.

*C. W. Davis*, for respondents.

Corliss, J.  The strife in this cause is between the pledgee of a stock of goods and certain attaching creditors.  As we view the case, it presents neither complicated questions of fact nor perplexing legal problems.  Prior to January, 1889, E. H. Wilson was engaged in the mercantile business with a Mr. Dewey under the firm name of Wilson & Dewey.  Becoming financially embarrassed, in January, 1889, they made a general assignment for the benefit of their creditors.  In August, 1890, the assignee sold this stock of goods at public auction.  On the sale the stock was purchased by Wilson in the name of M. R. Isham.  As a matter of fact the goods were purchased by Wilson for his own benefit, and the business was thereafter conducted in his own interest, Isham being only the nominal proprietor of the business. The motive for this is obvious.  Wilson was so involved that he feared that his creditors would break up his business at any moment by seizure of the property to obtain payment of their demands, if it was supposed that he himself was carrying it on as proprietor.  Therefore to the world he deliberately created the appearance that Isham was the owner of the stock of goods and the proprietor of the business, and that he was only a manager of the store.  This appearance was false, and the motive which prompted Wilson to create it was fraudulent.  For several years the business was conducted by him under this cover.  He had exclusive charge of it, and from the beginning to the moment

he turned over the stock of goods to the receiver of one of his creditors as pledgee he was responsible for every act which would naturally induce, and which did in fact induce, wholesale dealers to assume that Isham was the owner of the stock and the proprietor of the business. Wilson had Isham's name printed on the paper on which letters were written to wholesale merchants. The account in the bank was kept in Isham's name. All checks were signed in his name. His name was subscribed to all letters written to those who sold goods to be used in the business. The goods were ordered in his name. In fact every thing possible was done by Wilson to cause the public to believe that his connection with the store was simply that of manager, and that the stock and business belonged to and were being managed in the interest of Isham. Relying upon these appearances, created by Wilson, certain wholesale dealers sold Isham goods from time to time on credit, and some of these goods constitute a portion of the stock, on which they claim a lien by attachment superior to the lien of the pledgee. When Wilson purchased in the name of Isham the old stock of Wilson & Dewey at the assignee's sale, he borrowed of Lloyds Bankers, a firm engaged in the banking business in this state, the necessary sum of money to pay the purchase price, and gave his notes therefor. This banking business was subsequently transferred to a banking corporation of the same name. As part of this same transaction Isham executed to one of the Lloyds brothers an instrument which was obviously intended as a chattel mortgage to secure the amount of this loan. As such instrument was not placed on record until just before the attachment was levied, and as the attaching creditors extended credit to Isham between the time of the execution thereof, and the date of filing it, it is obvious that no rights can be claimed by the receiver of Lloyds Bankers under it as against such attaching creditors. *Bank* v. *Oium*, 3 N. D. 193, 54 N. W. 1034. The action in which these rights are being contested was originally brought by the state examiner against the Lloyds Bankers, a state banking corporation, to wind up its affairs, and annul its

charter under the statutes of this state. In this action F. M. Kinter was appointed receiver. Finding among the assets of the corporation the notes given by Wilson and the chattel mortgage executed by Isham, Mr. Kinter made efforts to secure possession of the stock of goods, and finally succeeded in obtaining such possession. It is a controverted question of fact whether he took possession under this chattel mortgage, void as to creditors of Isham, or as pledgee. We will assume the theory of the case most favorable to the receiver, and, in our judgment it is the one which the evidence requires us to accept. After he had obtained possession as pledgee to secure the notes held by him as receiver for the bank against Wilson, the creditors who claim a lien on this stock of goods as against him (the receiver) attached the property, permission to attach it having been granted by the court. When the receiver accepted the stock as pledgee it was delivered to him as the property of Wilson, and not as the property of Isham. Mr. Wilson at that time informed him, the receiver, that Isham had not then, and had never had, any interest in the stock or the business, but that he (Wilson) was the real owner and proprietor. By an amicable arrangement between the parties, the stock was sold, and the proceeds were placed in the hands of the receiver to abide the decision of this case. The attaching creditors intervened in the action, and the receiver was made a party. No questions of practice are raised, and we are asked to settle these conflicting claims in this action, all the parties interested being before the court. The case is here for a trial de novo. It is obvious that the only theory on which the attaching creditors can sustain their claim that their levies take precedence of the receiver's rights as pledgee is that Wilson has, by his conduct, estopped himself from claiming as against such attaching creditors that he was the owner of this stock; and the business carried on with it; and that the receiver, being a mere pledgee for an old debt owing by Wilson, stands exactly in his position, and is, therefore, likewise bound by the same estoppel. That Wilson himself would be estopped as against such creditors from claim-

ing the property, we are clear. Inspired by a fraudulent motive, he exhausted his ingenuity in efforts to make it appear that Isham owned this business and this stock of goods, his very purpose being to deceive the public as to the ownership of the stock and the business. These creditors sold Isham the goods for the purchase price of a portion of which the attachments were made, relying on the belief that he was the owner of such stock. Some of their very goods were among the property attached. To allow Wilson himself to claim the property as against them under these circumstances would be to permit him, actuated by a motive which cannot be approved, to entrap innocent traders by creating a false appearance, and then straightway deny for his own benefit the truth of the appearance by which others had been deceived, when the consequence of such a denial would be an injury to those who had relied on, and who were justified in relying upon, the appearance so created, and who, as Wilson was bound to know and did know, would rely upon such appearance. The facts of the case bring it within the doctrine of estoppel as that doctrine has been formulated by the courts. Even if the case fall within no statement of the doctrine to be found in the books, it is clearly within the essential spirit of that doctrine. And no principle of law should be more jealously guarded against all attempts to fritter it away than the principal of estoppel. In the whole range of jurisprudence there is no principal more ethical in character, or more beneficient in its application. We deem unnecessary to cite more than a few decisions to support our ruling on this point. *Rogers* v. *Robinson*, (Mich.) 62 N. W. Rep. 402; *Anderson* v. *Armstead*, 69 Ill. 452; *McDermott* v. *Barnum*, 19 Mo. 204; 2 Herm. Estop. § § 764, 765, 978. As Wilson himself would have been estopped from claiming title as against the attaching creditors, his pledgee stands in no better position. He is a privy, and as such is as fully bound by the estoppel as Wilson would be were he himself claiming the property. The pledgee was not a purchaser for value of the stock; nor did he loan any money on the strength of the security. Moreover, it expressly

appears that he knew that Wilson had been holding out Isham to the public as the owner of the property and the business. He therefore took the property as pledgee, chargeable with knowledge that Wilson might have estopped himself from claiming the goods as against those who had dealt with Isham believing him to be such owner. Indeed, we regard it as a fair inference from the evidence that Lloyds Bankers were well aware of the fact that Wilson was the real proprietor of the business, and yet was holding out Isham to the world as the proprietor. We do not say that the pledgee would occupy any better position, even though it appeared that he had bought the property from Wilson for cash, without any knowledge of the facts on which the estoppel rests. The general rule is that a privy is as fully bound by the estoppel as the person between whom and himself the relation of privity exists. 2 Herm. Estop. pp. 921, 922, 978, 1231; *Parker* v. *Crittenden*, 37 Conn. 148; *White* v. *Patten*, 24 Pick. 324; *McCravey* v. *Remson*, 19 Ala. 430; *Crane* v. *Turner*, 67 N. Y. 437; *Shaw* v. *Beebe*, 35 Vt. 205; *Corbett* v. *Norcross*, 35 N. H. 99; *Snodgrass* v. *Ricketts*, 13 Cal. 359: *Thistle* v. *Buford*, 50 Mo. 278; *Couchman's Adm'r* v. *Maupin*, 78 Ky. 33. It is unnecessary to state the limitations of this doctrine, for this case falls within no known exception to the general rule that estoppels bind privies. The District Court will enter a judgment directing the receiver to pay over to the attaching creditors, in the order of their respective levies, the proceeds of the property in question in his hands, first to the Duluth Dry Goods Company until its judgment is paid, and, second, to Winston, Farrington & Co. If there is any balance, it will be retained by him as such receiver.

WALLIN, C. J., concurs. Bartholomew, J., having been of counsel, did not sit at the hearing of the case.

On Application to Modify Judgment.

(July 20, 1896.)

The Receiver asks us to modify the judgment herein. The

ground of his application is that, before the interveners had appealed and given a stay bond, he had distributed among the creditors of Lloyds brothers the proceeds of the stock of goods, less the sum of $338.48, paid to the sheriff of La Moure County on account of the judgments of the interveners. It does not appear that this was done under order of the court. But, assuming that it was, we are unable to see why this should operate to the prejudice of the interveners. The orders which were made assuming that they authorized the receiver to make such distribution were made on the application of the receiver, and without notice to the interveners. The failure of the interveners to appeal or obtain a stay before this money was paid out by the receiver is immaterial. The only effect of a stay would be to prevent the receiver from receiving the money from the interveners in case it was in their possession. There was a contest over the right to the proceeds of this stock of goods between the receiver and the interveners. The receiver was successful in the District Court, but the interveners had a right to appeal, and, so long as this right existed, the question of title to such proceeds was in controversy; and the receiver could not safely distribute such proceeds during this time. There was the danger during all this period that the interveners would appeal, and be successful. While the question whether he could hold such proceeds as against the interveners was unsettled, he should have refrained from paying 'out this money, which might, in a later stage of the litigation, be adjudged to belong to the interveners. The interveners were under no obligation to appeal and give a stay bond to prevent his distributing this fund among the creditors. In fact a stay bond would have had no such effect. Such a bond merely prevents the successful suitor from enforcing his judgment against the defeated litigant. There was no occasion for a stay bond in this case. The fund was in the hands of the receiver, and the decision was in his favor. The interveners were under no obligation to give a bond to stay those proceedings on the part of the receiver which the judgment in no way authorized. The judgment did

not direct him to pay out this money to creditors. Nor would such a provision in the judgment have been proper. There was no such question before the court. It was merely a question whether the receiver or the interveners had the superior lien on the property. When the court decided that the receiver had the prior lien, it had disposed of the litigation. The receiver, then, as a prudent man, should have refused to pay out this money until the question of right to this fund was settled in such a way as to preclude further litigation of it by the interveners. It would be a novel doctrine that a trustee, for the benefit of creditors, who in suit for the conversion of property, has been successful, can, when defeated on appeal, defend himself from liability by showing that he has paid out to creditors, either voluntarily or under an *ex parte* order of the court, the proceeds of the property, which the court finally adjudges to belong to the plaintiff. It is his business to retain the fund until the question whether he has any right to pay it out is finally settled; and that question can be finally settled only in the suit to which those who claim to be entitled to the fund are parties. When it is finally established that the fund belongs to the claimant, and is not a part of the trust estate, the trustee cannot justify his payment of the fund to creditors, for it is only trust property that he has any authority to distribute among them. So far as the receiver has paid moneys to the sheriff on account of interveners' judgment, he will be entitled to credit therefor on the final judgment which we have directed to be entered by the District Court. We regret that Mr. Kinter finds himself placed in this embarrassing position, but it is our duty to protect the rights of the interveners under the law.

The application for a modification of the judgment is denied.

(68 N. W. Rep. 92.)

NOTE—A lessee is not estopped to deny his landlords title in an action upon a contract of lease void as contrary to the policy of express law. *Uhlig* v. *Garrison,* 2 Dak. 71. Where evidence of an estoppel in *pais* is introduced without objection and a verdict rendered upon the evidence, the point that the estoppel has not been pleaded is waived. *Parliman* v. *Young,* 2 Dak. 175; *Davis* v. *Davis,* 26 Cal. 38. To establish an estoppel in *pais* it must be shown. First. That the person sought to

be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give, or the title he proposes to set up. Second. That the other party has acted upon or has been influenced by such act. Third. That the party will be prejudiced by allowing the truth of the admission to be disproved. *Parliman* v. *Young*, 2 Dak. 185; *Brown* v. *Brown*, 30 N. Y. 519; *Lux* v. *Haggin*, 69 Cal. 266, 10 Pac. Rep. 676. One who expressly admits or avers by his pleading that which establishes his adversary's rights cannot thereafter be permitted to deny the existence of such facts or to prove inconsistent circumstances. *Myrick* v. *Bill*, 3 Dak. 284; *Paige* v. *Willet*, 38 N. Y. 28. A party is not estopped from attacking a judgment as void for want of service of process, because an attorney appeared for him, without his authority, knowledge or consent. *Williams* v. *Neth*, 4 Dak. 360. A cause of action once litigated as a counterclaim is extinguished and cannot be thereafter litigated as an independent cause of action. *Thompson* v. *Shuster*, 4 Dak. 163. Purchaser of property when estopped to avail himself of action for breach of warranty. *J. I. Case T. M. Co.* v. *Vennum*, 4 Dak. 92; *Minnesota Th. Mfg. Co.* v. *Hanson*, 3 N. D. 81. Wife joining in mortgage of husbands real estate is estopped from claiming a subsequently acquired adverse title. *Yerkes* v. *Hadley*, 5 Dak. 324. One who participates in and assents to the carrying out of a contract in a certain manner is estopped to say that it was not properly done. *Hennessy* v. *Griggs*, 1 N. D. 52. Estoppel against insured by silence after notice of errors made by agent of insurer in writing application. *Johnson* v. *Ins. Co.*, 1 N. D. 167. School officers cannot estop the township by representations express or implied, that the facts to authorize the issue of a lawful warrant exist. *Bank* v. *School Township*, 1 N. D. 26. County not estopped to show illegality of expenditure by acts of its commissioners in accepting the benefits of their *ultra vires* acts. *State* v. *Getchell*, 3 N. D. 243. Municipal corporations are estopped as against *bona fide* holders of its bonds from setting up that the preliminary steps necessary to authorize the issue of the bonds were taken—when bonds recite that conditions precedent have been complied with. *Coler* v. *Dwight School Tp.*, 3 N. D. 249. People dealing with a foreign corporation are estopped from pleading against it, noncompliance with the statute. *Washburn Mill Co.* v. *Bartlett*, 3 N. D. 138. Estoppel by ambiguous instructions to agent. *Anderson* v. *Bank*, 4 N. D. 182, 5 N. D. 451. By representations. *Fargo Gas & Coke Co.* v. *Fargo G. & E. Co.*, 4 N. D. 219. A party on whose objection evidence was excluded cannot complain on appeal that it is not before the appellate court. *Taylor* v. *Taylor*, 5 N. D. 58.